**In the Matter of Mary Kathleen CORD, Debtor.**

No. 85–04548–3.

United States Bankruptcy Court, W.D. Missouri, W.D.

July 31, 1986.

Stuart D. Wieland, Kansas City, Mo., for debtor.

ORDER DISMISSING CHAPTER 7 CASE AS "A SUBSTANTIAL ABUSE" OF THE PROVISIONS OF CHAPTER 7 UNLESS THE CASE IS CONVERTED TO CHAPTER 13 WITHIN 10 DAYS OF THE FILLING OF THIS ORDER

DENNIS J. STEWART, Chief Judge.

In her initial schedules, filed with the court on February 26, 1986, the debtor scheduled her monthly income as $1,333.00 and her monthly expenses as $580.00. The difference of $753.00, if multiplied times the 60 months, would have paid half or more of the scheduled unsecured debt, $8,120.11.

In a hearing subsequently held by the court on June 17, 1986, to determine the issue of whether this case constituted a "substantial abuse" of the provisions of chapter 7, the debtor testified that her monthly expenses had increased since the date of filing because her roommate had moved out of their apartment, thus doubling her rent and her utility expenses,[1] and because she expended a minimum of $60.00 per month to defray her grandmother's necessary expenses.[2] Still, the court found orally at the conclusion of the hearing that an excess was available from which a significant portion of the unsecured debt might be paid.[3] Therefore, the court took the issue of "substantial abuse" under advisement for ten days during which the debtor had the option of converting the chapter 7 proceedings to chapter 13 proceedings. The debtor, however, elected not to convert these proceedings to chapter 13 proceedings, but rather submitted a second amended budget, on the basis of which she predicated a new claim of inability to pay all or part of the scheduled unsecured debt. Even if this court says nothing, however, of the continually shifting factual

1. In her testimony before this court, the debtor stated that her monthly rent had doubled from $160 to $320 and that her utilities had also doubled from $70 to $140 and that miscellaneous expenses for her grandmother had increased from $10 to $60 per month. Even if all of her factual contentions to this effect were accepted by the court, however, the total increase was less than $300, thus leaving an excess for payment to creditors of some $450 per month.

2. See note 1, *supra*. It seemed to be the contention of the debtor that she should be permitted an open ended amount of expenses to devote to her grandmother, but the court is unable to do that if it is not to make a dead letter of section 707(b).

3. Accordingly, it granted the debtor 10 days in which to elect to convert to a chapter 13 proceeding. Rather than do that, the debtor submitted another amended statement in which she reduced her monthly income, now contending that $1,333 had, in fact, been her "gross" payment while her "net" income was really $1,009.05. The rent is again escalated from the $320 intermediately contended, see note 1, *supra*, to $370. Medical and drug expenses increased from $50 to $100. Recreation is decreased from $30 to zero. And the total expenses are misadded in order to purport to equal a total of $1,090. But the correct addition yields a total of $730. Thus, granting all of the debtor's contentions, she has nearly $300 per month to pay unsecured creditors, whose obligations are scheduled at a total of $8,120.11. This could easily be paid well within the 60 months allottable to a chapter 13 plan.

contentions of the debtor, the most recent statement clearly shows the availability to debtor of substantial amounts of monthly income which are more than sufficient to pay a substantial portion of the existing unsecured debt.[4]

Under such circumstances, it makes little sense for the protection of the bankruptcy laws to be extended to the debtor. When debts are discharged simply because the debtors do not wish to pay for them, the bankruptcy laws have the effect of discouraging responsibility instead of encouraging it. In this court's prior decisions, it has been observed that the bankruptcy laws have the lofty purpose of granting responsible persons needed relief from overburdening debt—a relief which may be necessary to the continued effectiveness of our economic democracy. See, e.g., *Matter of Burstein-Applebee Co.*, 63 B.R. 1011 (Bkrtcy.W.D.Mo.1986), to the following pertinent effect;

"[I]t is through the process of asset collection that, in the final analysis, the bankruptcy courts are able to assure the honesty of debtors. Otherwise, bankruptcy becomes the monopoly of those who would abuse its available processess to escape their lawful debts, unjustly and without genuine necessity. As a means of giving a new economic life to those whose good faith efforts have been unavailing, the bankruptcy process would gradually but rapidly fall into desuetude, thus deleting from the lifeline of our constitution the engine which gave our political democracy its necessary economic impetus. For it is clear that if a citizen has the right to only one economic chance—if one significant economic failure means that he must spend the remainder of his existence in servitude, despite the fact that his industry and creativity might otherwise have bestowed benefits upon himself and society—then the predicate upon which our democratic institutions exist would stand in grave peril."

But if discharges are granted which are not needed, and are only used to grant an unwarranted economic advantage, then the bankruptcy laws will have been used to disturb the social fabric rather than to mend it. And this potential for abuse was what the Congress desired to extinguish in enacting § 707(b). See *In re Kress*, 57 B.R. 874, 877, 878 (Bkrtcy.D.N.D.1985), to the following effect:

"The credit industry in proposing changes in the Bankruptcy Code argued that it was both unfair to creditors and burdensome to the public at large to allow debtors to seek Chapter 7 relief giving little or nothing to creditors where a substantial portion of those debts could be paid out of disposable income. Legislative history suggests that section 707(b) was primarily directed towards this kind of abuse. S.Rep. No. 446 on S. 2000, 97th Cong., 2d Session (1982). Congressman Mike Synar, the Bills sponsor, as well as three of his congressional colleagues made it clear in their floor remarks that by the amendments, Congress was seeking to eliminate a preceived abuse of the bankruptcy system by consumer debtors who have sufficient future income by which they would be capable of paying back their debts."

Accordingly, for the foregoing reasons, it is hereby

ORDERED that the within chapter 7 proceedings be, and they are hereby, dismissed as a "substantial abuse" of the provisions of chapter 7 within the meaning of § 707(b) of the Bankruptcy Code unless the case is converted to chapter 13 within 10 days of the date of filing of this order.

---

4. See note 3, *supra*.