**In re Gary Lee BRALEY, Margarette Clark Braley, Debtors.**

**Bankruptcy No. 89–00567–N–B.**

United States Bankruptcy Court, E.D. Virginia, Norfolk Division.

July 31, 1989.

---

Dandridge H. Yon, Virginia Beach, Va., for debtors.

Linda W. Coppinger, Office of the U.S. Trustee, Norfolk, Va.

## OPINION AND ORDER

HAL J. BONNEY, Jr., Bankruptcy Judge.

Holy smoke!

Have they nothing else to do?

The United States Trustee would sink a sailor because he is eating too much on the U.S.S. Iowa [1], is smoking too many cigarettes, his wife and daughter, too, his wife is committed to Alcoholics Anonymous, his teenage children require braces and, shame of shames, they are just living a mite too high on the hog [2] to qualify for relief in straight, Chapter 7 bankruptcy. If the 'crats must eat sow belly, everyone else must eat sow belly.

We can envision the headlines now:

### U.S. TRUSTEE ATTACKS U.S.S. IOWA SAILOR

### U.S. TRUSTEE TO REDUCE BANK- RUPTCY FILINGS BY 50%

No matter how scatterbrained the assault on sailors and little girls may appear, perhaps the U.S. Trustee [hereinafter "they" or "the system"] has a better grasp on the intent of Congress than we. [We don't think so, but we are going to give them the benefit of the doubt and explore

---

**1.** If I were a sailor on the U.S.S. Iowa, I'd be smoking those ciggies and crunching those Clark bars, too.

**2.** That means hams and shoulders.

that premise.] Therefore, we shall listen to questions like, "How much are Cokes on the Iowa?" "Can you get them cheaper?" "What's the cost of a candy bar?" Even "the system" can get a hearing here, well able to endure the satire[3] that bites, but which is also searching.[4]

What are we talking about? Are they waiting to knock debtors off as they come to the Section 341 meetings? No, it is more subtle. It is by motions to dismiss the cases for substantial abuse.

In 1984, 11 U.S.C. 707(b) came into being stating:

> After notice and a hearing, the court, on its own motion *or on a motion by the United States trustee, but* [and] not at the request or suggestion or any party in interest, may dismiss a case filed by an individual debtor under this chapter [11 USCS Sections 701 et seq.] whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter [11 USCS Sections 701 et seq.]. There shall be a presumption in favor of granting the relief requested by the debtor.

Note three premises from the onset as we move through this. Always look back, dear reader, over your shoulder, to these benchmarks:

1. The Court and the United States Trustee have the *duty* to examine cases for abuse.

2. The abuse must be *substantial.*

3. There is a *presumption* in favor of the debtor.

Three criteria: duty, substantial abuse and presumption.

Now to the saga.[5] There is a transcript and no purpose exists in having a script if the opinion is to recite every detail, as some colleagues do. Read it before it appears on "Saturday Night Live." The concern of

the U.S. Trustee is that the debtors' disposable monthly income is too large. It is $2,676.68. Sample concerns are:

1. Telephone          $135.
2. Food               $525.
3. School lunches     $ 47.
4. Excessive on-board ship expenses.

There is also the concern of "running up large bills and luxuries" just prior to filing.

We can nit-pick family expenditures to death. How much should one spend on shaving cream [and these items came up at the hearing], sodas, candy, lunches, church, laundry and cleaning, etc.? The basic factual issue for the discretion of the Court to sit upon is whether the *total picture* is abusive. Clearly, there are some monthly expenditures quite out-of-line for the norm. But should the debtors be denied entry down the yellow brick road? Are extravagant people to be barred from bankruptcy?

> Then up and started our goodwife, Gied three skips on the floor: "Good man, you've spoken the foremost word; Get up and bar the door."
>
> —Early Scottish Ballad

The factual problem is that the U.S. Trustee wishes, without malice aforethought, to impose its mindset on the lives of those who file bankruptcy. For instance, there are two children in the Braley home. One is unemployed and in its motion to dismiss the case for substantial abuse they argue, "U.S. Trustee believes that debtor is not legally responsible for the health and welfare of this son." I can't wait to get home and tell this to my son who just turned eighteen! Dear Trustee, there may be good reason for keeping them home after they reach their majority. We do not know what the Braley story is, but we say with great emphasis that a family has the *basic human right* of keeping at home even a problem child, if that's the case.[6] The sociological significance is frightening. They'll start with debtors and

---

**3.** We fancy ourselves Addison and Steele.

**4.** This Court is a supporter of the U.S. Trustee system having observed and worked with it since its inception here as a pilot program. We commend it.

**5.** John Galsworthy would be pleased.

**6.** If the U.S. Trustee is offering employment to the Braley eighteen year old, please put it in writing.

then move to lawyers and judges. "Tomorrow the world." [7]

Let us assume there is some degree of extravagance in the Braley household. If there is, it's mild, not abusive. Off against the U.S. Trustee's indictment are these factors:

1. A sailor frequently transferred over the past few years. Japan to Hawaii to South Carolina to Virginia.

2. Maintaining two households. One aboard ship, the other for the three dependents.

3. The needs of a wife through A.A. (That she has gone this route should be praised.)

4. Teenage children with the usual needs, some medical, some dental.[8]

Now, the Court having heard, reviewed and studied all of this and being of the opinion as a finding of fact that a mild extravagance exists, but not a substantially abusive extravagance, let us turn to the law. The U.S. Trustee may be more stable there. Indeed, debtors had their case in South Carolina dismissed for abuse. What says the law?

### The Law

Read again, please, 11 U.S.C. 707(b) and keep in mind the three premises that we must keep before us: duty, substantial abuse and presumption favoring the debtors.

The Fifth, Eighth and Ninth Circuit United States Courts of Appeal have each addressed the issue of the proper application of determining substantial abuse relative to the intent of the drafters of 11 U.S.C. Section 707(b).[9] The Fifth Circuit determined that the test for determining whether a debt should be classified as a business debt, rather than a consumer debt acquired for personal, family or household purposes, is whether it was incurred with an eye toward profit. If fifty percent or more of the debts were business debts, 11 U.S.C. Section 707(b) was inapplicable. *Matter of Booth*, 858 F.2d 1051 (5th Cir.1988). There is no question but that we deal instantly with consumer debts.

In *In re Kelly*, the Ninth Circuit concluded that when the debtor's obligations are primarily consumer debts, the primary factor to be considered in determining whether granting Chapter 7 relief would be substantial abuse within the meaning of 11 U.S.C. Section 707(b) was the debtor's ability to pay his debts when they become due. 841 F.2d 908 (9th Cir.1988). In support of *Kelly*, the Fifth Circuit in *In re Walton* concluded that according to the legislative history of Section 707(b), if upon examination of the debtor's current and future income the debtor could fund an effective Chapter 13 plan, it would be substantial abuse for the court to grant the debtor Chapter 7 relief. 866 F.2d 981 (8th Cir. 1989).

On the Federal District Court level, one court has decided to adopt the specific *Kelly* and *Walton* standard for determination of substantial abuse while another court has recognized that a broader scope of examination should be applied to the determination of a Section 707(b) substantial abuse. The United States District Court for the Northern District of Ohio states that the principal factor in determining substantial abuse is the debtor's ability to pay his debts. *In re Krohn*, 87 B.R. 926 (N.D.Ohio 1988). Another court held that though the debtor's ability to pay is a principal factor in determining whether granting relief would be a substantial abuse under Section 707(b), the court must also consider all the facts and circumstances which may tend to aggravate or mitigate the abusiveness of the filing. *In re Herbst*, 95 B.R. 98 (W.D.Wis.1988).

7. *Hitler's Children*, R.K.O. Radio Pictures, 1943, Dir. Edward Dmytryk.

8. Perhaps we should order them out of the Girl Scouts.

9. The Court of Appeals for the Third Circuit also considered an 11 U.S.C. Section 707(b) substantial abuse issue but merely affirmed the dismissal of the plaintiff/creditor's motion for dismissal since only the bankruptcy court could initiate this type of proceeding. *See Matter of Christian*, 804 F.2d 46 (3rd Cir.1986).

Only a modest amount of case law exists in the Fourth Circuit on the issue of denial of Chapter 7 relief pursuant to substantial abuse proceedings. Since the enactment of Section 707(b) in 1984, the matter of determination of substantial abuse by a Chapter 7 debtor has been addressed seven times in published opinions by bankruptcy courts within the Fourth Circuit. *In re Cecil,* 71 B.R. 730 (W.D.Va.1987); *In re Kitson,* 65 B.R. 615 (E.D.N.C.1986); *In re Festner,* 54 B.R. 532 (E.D.N.C.1985); *In re White,* 49 B.R. 869 (W.D.N.C.1985); *In re Wright,* 48 B.R. 172 (E.D.N.C.1985); *In re Allred,* 45 B.R. 676 (E.D.N.C.1985); and *In re Bryant,* 47 B.R. 21 (W.D.N.C.1984).

■ The following general principles can be derived from the conclusions reached by other courts of the Circuit:

(1) A creditor does not have a right to bring a motion for dismissal based on substantial abuse under 11 U.S.C. Section 707;

(2) Section 707(b) proceedings apply only to debtors with primarily consumer debts;

(3) In applying Section 707(b), the courts shall acknowledge a presumption in favor of granting bankruptcy relief to the debtor;

(4) "Substantial abuse" is not defined in the Bankruptcy Code. Some courts from other jurisdictions have been using the "ability to pay standard" to determine substantial abuse. The court may consider ability to pay, but should be hesitant to use its broad power granted by Congress to decide how individuals should live their lives;

(5) The court should consider the totality of the circumstances in light of the presumption in favor of granting relief in determining whether substantial abuse would result from granting Chapter 7 relief; and

(6) The court should determine each case in light of the intention of Congress in establishing the Bankruptcy Code that relief should provide a "fresh start" for financially troubled persons, but not for the unscrupulous.

*This Court adopts the six legal criteria set forth above as the legal criteria by which the facts in a case are to be gauged.*

■ I will not swear myself in nor take judicial notice of it, but the underlying scenario is personally quite familiar. As President of the National Conference of Bankruptcy Judges, I was too frequently walking the halls of Congress during the legislative frame which led to the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353. I am quite aware of the efforts to enact strong consumer bankruptcy provisions.

In simpler language, the credit industry pushed for a compulsory Chapter 13 by way of a future earnings test. The chief opponent was Senator Howard M. Metzenbaum of Ohio who said,

I thought it was a terrible idea. It would have forced bankruptcy judges to become soothsayers and engage in the impossible task of predicting someone's earnings and financial obligations. Bankruptcy relief would have become hostage to a judge's guesses about how much an individual would earn, what their financial burdens would be, whether they would become sick, unemployed, and so on. In some cases, because judges are human, they simply would be wrong.

—130 Congressional Record—Senate
S 7624, June 19, 1984.

Senator Metzenbaum concluded, "I cannot tell you how pleased I am that both the House and Senate have agreed to the total elimination of the future income language." *Ibid.*

Most of the calls for a more restricted access to bankruptcy came in the House and one can consult H. Rept. No. 95–595.

■ Based upon this legislative history, we are persuaded that no future income tests exist in 707(b) and if it did, as a finding of fact, the Braley family has insufficient future income to merit barring the door in light of the circumstances of this Navy family.

Do not overlook the fact this is a motion to dismiss, to bar an order for relief under Chapter 7. In the motion, the U.S. Trustee argues two alternate routes [par. 16]: repay the debts outside of bankruptcy or

within a Chapter 13 proceeding. The latter argues what it cannot. Congress clearly rejected a mandatory 13. This would, in truth, be a clone of that. The other alternative, repay outside of bankruptcy, is what the U.S. Trustee really seeks.

And this goes to the basis of bankruptcy, its purpose, to give the honest debtor a *fresh start.* Nothing, not a bare bone of evidence, even indicates dishonesty on the part of the Braleys. The U.S. Trustee is facing the big guns on the matter of fresh start. This basic purpose has been recognized by the Supreme Court even before "the system" was a fascination. *Burlingham v. Crouse,* 228 U.S. 459, 33 S.Ct. 564, 57 L.Ed. 920 (1913); *Wright v. Vinton Branch,* 300 U.S. 440, 57 S.Ct. 556, 81 L.Ed. 736 (1937); *Lines v. Fredrick,* 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970).

■ Often guilty of simplification, it appears to us after we slice through it all, after we boil it down in our laboratory crucible, that the basic issue is "are the extravagant entitled to the benefits of fundamental bankruptcy?" If they are not, "the system" will have served the nation well, at first blush, by reducing the number of bankruptcy filings by at least fifty percent (50%). Amazing! This one little case bears the seed to do all of that.

Beware, we are tempted to launch into ten pages of discussion as to why even the extravagant should have relief. We think, too, that this has long been settled under the "fresh start" purpose, so often and so well enunciated. Let us say two things. (1) In our view, the largest single cause of bankruptcy has been, is, and always will be living beyond one's means. (2) Bankruptcy for even the extravagant benefits both them and society. A yearly survey we made some years ago revealed that the repeat rate was only 5%. We then concluded that bankruptcy assists most in ironing out life a bit.

Consider the alternatives. Indeed, carried to the limits of the possibilities, the disorder in lives and in families is unthinkable.

The conclusion of law based upon the six criteria we have adopted *supra* is clear.

(1) A creditor has not brought this action. (2) The debts here are primarily consumer debts. (3) The presumption in favor of the debtors has not been refuted. (4) Substantial abuse does not exist in this case. There is no dishonesty, no evil intent demonstrated, no string of prior bankruptcies, no failure to fully disclose, no misrepresentation. (5) The Court has considered the totality of the circumstances and has concluded this family can rightfully benefit from straight bankruptcy. (6) These are financially troubled people, not unscrupulous ones.

### Conclusions

Having stomped through the tulips and having said all of the above, what can we conclude not only in resolving the present crisis, but in dealing with similar motions pending and cases yet to be filed? Really, this case is Planters Peanuts (from the *Iowa* vending machine) compared to the need for formation of guidelines which can, in truth, be helpful. And that is what we seek to do with thanks to the U.S. Trustee.

First and supreme, we feel, is the purpose of bankruptcy, enunciated often by the Supreme Court as a "fresh start." If this is tampered with, the effect not only on debtors but on society is unthinkable. The social, economic, criminal, marital, family implications are terrific. We might wish no one became ill, but they do; we might wish all paid their debts, but they don't. We have always been impressed with the fact that at the Constitutional Convention fellows like James Madison, Benjamin Franklin, and George Washington were sitting around at that early stage of the republic knowing they had to accommodate in the document this matter of debtors; thus, by name bankruptcy was included in, not as a right, but as a privilege. But for compelling reasons to the nation, a route to a fresh start had to be possible.

Not for the evil, but for the honest debtor relief must be available ... and this without driving these people out or to the Bar 13 Corral.

Next, 11 U.S.C. 707(b) exists, is valid and shall be enforced.[10]  Obviously, the U.S. Trustee is attempting to do so and this Court is not unconscious; it is alert to abusive filings as well.

The U.S. Trustee must comprehend that we are hunting for substantial abusers.

The U.S. Trustee should avoid involvement in sociological aspects and seek cases with hard, grievous facts without regard to person.

The hunt shall be impartial.

Legally, the U.S. Trustee should apply the six criteria adopted by the Court, *supra.*

The motion of the U.S. Trustee to dismiss the case of Gary Lee and Margarette Braley for substantial abuse is denied.

The U.S. Trustee shall, in light of this opinion, review like motions pending in other cases and advise the Court within thirty days of this Order which cases should be set for hearing.

If the U.S. Trustee appeals this decision, the provision of the above paragraph would lie in abeyance pending a final opinion of an appellate court.

If the U.S. Trustee decides to appeal the decision, in order to have ample participation on the part of debtors, a consortium or friends of the Court shall be sought.  It may be difficult for the Braleys to go up against the Department of Justice alone.

IT IS SO ORDERED.

### Epilogue

We have had some fun at another's expense.
He who feels the advantage ought also to feel the expense.
—Latin Legal Proverb

The method appeared appropriate for the ill.  And by way of that approach, not unlike archaeologists, we have examined a foundation of bankruptcy.  Who should re-

ceive its Balm of Gilead?  No court can be a court of its own opinions, yet
The law shall prevail, but within that law a reasonableness is to be found.
—The Prolific Anonymous

---

**10.** We must note not just in passing that a serious gap may here exist; indeed, an impartiality.  The pertinent section speaks only of consumer debts.  What of those who through great extravagance create business debts?  They are immune from attack under these provisions.

We neither beg it nor decide it, but the validity of Section 707(b) may be subject to attack on these grounds.