**John E. WAITES, Jr., United States Trustee Region Four, Appellant,**

v.

**Gary Lee BRALEY, Margarette Clark Braley, Appellees.**

**Civ. A. No. 89–639–N.**

United States District Court,
E.D. Virginia,
Norfolk Division.

Jan. 26, 1990.

Debera F. Conlon, Asst. U.S. Trustee Norfolk, Va., for appellant.

Martin K. Griffin, The Legal Clinic of Stuart R. Gordon Virginia Beach, Va., for appellees.

Beril M. Abraham, Valerie L. Bowen, Pender & Coward, Virginia Beach, Va., amicus brief for appellees.

## OPINION

REBECCA BEACH SMITH, District Judge.

The United States Trustee appeals the bankruptcy court's denial of his motion to dismiss the case of Gary Lee and Margarette Braley for substantial abuse pursuant to 11 U.S.C. § 707(b). On February 10, 1989, the Braleys filed a petition for relief under Chapter 7 of the Bankruptcy Code in the Eastern District of Virginia, Norfolk Division. On April 21, 1989, the Trustee filed a Motion to Dismiss for Substantial Abuse under Section 707(b). That section, enacted with the Bankruptcy Amendments and Federal Judgeship Act of 1984, provides that:

> [a]fter notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

11 U.S.C. § 707(b) (Cum.Supp.1989).

The Trustee identified in his Motion to Dismiss three bases for a finding of substantial abuse. First, the debtors had filed a prior Chapter 7 petition in the Bankruptcy Court of the District of Hawaii on February 9, 1987, which action was transferred to South Carolina on January 15, 1988. Motion to Dismiss for Substantial Abuse, *In re Braley*, Bankruptcy Case No. 89-00567–NB, at 1–2 (April 21, 1989) (hereinafter referred to as "Motion to Dismiss").[1] Despite the pending proceeding, the Braleys incurred $9,000 of additional debt by granting a second lien on a 1983 Mazda station wagon to Household Finance Subsidiaries on March 7, 1988. Motion to Dismiss at 2. Second, the South Carolina proceeding was dismissed as a substantial abuse of the provisions of Chapter 7 on August 4, 1988, just six months prior to the filing of the present petition. Motion to Dismiss at 2. Finally, the Trustee objected to the following items on the debtors' schedule of expenditure as unnecessary or excessive: monthly food expenses of $718.00, monthly cable television and recreation expenditures of $240.00, monthly clothing costs of $200.00, monthly periodical expenses of $90.25, and unspecified monthly contributions of $50.00. Motion to Dismiss at 2. The Trustee also noted that a $294.00 monthly repayment for salary advances would continue for only three months. Motion to Dismiss at 2. The

---

1. The Braleys state that the petition was filed on February 7, 1987, and was transferred in November of 1987. Reply Brief of Appellees, *Waites v. Braley*, Civil Action No. 89–639–N, at S2 (October 30, 1989) (hereinafter referred to as "Appellees' Brief"). This discrepancy in dates is not of significance to the current appeal.

Trustee concluded that "[a]s debtors have the ability to repay either outside of bankruptcy or within a Chapter 13 proceeding; and as these debtors have shown a complete disregard for the rights of their creditors in incurring additional debt while in the midst of a Chapter 7 proceeding and failing to make any adjustments to their spending habits, the granting of Chapter 7 relief will amount to substantial abuse." Motion to Dismiss at 3.

Rather than file specific objections to the Motion to Dismiss, the debtors moved for a hearing on the matter. The Honorable Hal J. Bonney, Jr., United States Bankruptcy Judge for the Eastern District of Virginia, conducted the hearing on May 25, 1989, and denied the Trustee's Motion to Dismiss by Opinion and Order dated July 31, 1989, 103 B.R. 758. In the Opinion and Order, the bankruptcy court formulated the following six-part test for evaluating claims of substantial abuse:

(1) A creditor does not have a right to bring a motion for dismissal based on substantial abuse under 11 U.S.C. Section 707;

(2) Section 707(b) proceedings apply only to debtors with primarily consumer debts;

(3) In applying Section 707(b), the courts shall acknowledge a presumption in favor of granting bankruptcy relief to the debtor;

(4) "Substantial abuse" is not defined in the Bankruptcy Code. Some courts from other jurisdictions have been using the "ability to pay standard" to determine substantial abuse. The court may consider ability to pay, but should be hesitant to use its broad power granted by Congress to decide how individuals should live their lives;

(5) The court should consider the totality of the circumstances in light of the presumption in favor of granting relief in determining whether substantial abuse would result from granting Chapter 7 relief; and

(6) The court should determine each case in light of the intention of Congress in establishing the Bankruptcy Code that

relief should provide a "fresh start" for financially troubled persons, but not for the unscrupulous.

Opinion and Order, *In re Braley*, 103 B.R. 758, 762–763 (United States Bankruptcy Court for the Eastern District of Virginia, July 31, 1989) (hereinafter referred to as "Opinion and Order").

After a brief review of the legislative history of Section 707(b), the bankruptcy court concluded that "[b]ased upon this legislative history, we are persuaded that no future income tests exists [sic] in 707(b) and if it did, as a finding of fact, the Braley family has insufficient future income to merit barring the door in light of the circumstances of this Navy family." Opinion and Order at 763. Finally, applying the six factors to the case at hand, the bankruptcy court concluded that:

(1) A creditor has not brought this action. (2) The debts here are primarily consumer debts. (3) The presumption in favor of the debtors has not been refuted. (4) Substantial abuse does not exist in this case. There is no dishonesty, no evil intent demonstrated, no string of prior bankruptcies, no failure to fully disclose, no misrepresentation. (5) The Court has considered the totality of the circumstances and has concluded this family can rightfully benefit from straight bankruptcy. (6) These are financially troubled people, not unscrupulous.

Opinion and Order at 764. Accordingly, the bankruptcy court denied the Motion to Dismiss. Opinion and Order at 764. This appeal followed.

The Trustee raises four issues on appeal: I. Did the Bankruptcy Court err in determining that ability to repay debts does not constitute substantial abuse?

II. Did the Bankruptcy Court err in holding that the Braleys had insufficient disposable income to repay creditors?

III. Did the Bankruptcy Court err in failing to dismiss for substantial abuse based upon a finding of no bad faith?

IV. Did the Bankruptcy Court err in determining the issue of substantial

abuse based upon factual matters not in controversy?

Each issue will be discussed separately in the order raised.

### I. The Ability to Pay Standard

■ As discussed above, the bankruptcy court established a six-part test for evaluating claims of substantial abuse. Five of these criteria are not in dispute. The first three factors identified by the court—a creditor's inability to bring a 707(b) motion, the section's applicability only to debtors with primarily consumer debt, and the presumption in favor of the debtor—are explicitly stated in Section 707(b). Moreover, the parties to this proceeding have acknowledged in their briefs and during oral arguments that in certain circumstances the substantial abuse inquiry requires an evaluation of the totality of the circumstances, the bankruptcy court's fifth consideration. Finally, the Trustee has recognized in his brief Chapter 7's "fresh start" rationale, the sixth element of the bankruptcy court's test.

The fourth element of the bankruptcy court's test, the role of the debtor's ability to repay his debts, is at the center of this appeal. The bankruptcy court's precise holding in this regard is unclear. In outlining the six-factor test, the bankruptcy court stated that "the court may consider ability to pay, but should be hesitant to use its broad power granted by Congress to decide how individuals should live their lives." Opinion and Order at 762. However, just two pages later the bankruptcy court concluded "that no future income tests exists [sic] in 707(b)." Opinion and Order at 763.

In light of the developing case law and the legislative history of Section 707(b), this court cannot agree that there is no future income test in the substantial abuse inquiry. Rather, the weight of authority compels the conclusion that a debtor's ability to repay his debts is a key consideration in determining whether he has abused the

provisions of Chapter 7, and a debtor's future income is one component of his ability to repay. As noted by the Court of Appeals for the Ninth Circuit in reaching the same conclusion, "the unanimous conclusion of bankruptcy courts has been that the principal factor to be considered in determining substantial abuse is the debtor's ability to repay the debts for which a discharge is sought." *In re Kelly*, 841 F.2d 908, 914 (9th Cir.1988); *see, e.g., In re Cord*, 68 B.R. 5, 7 (Bankr.W.D.Mo.1986); *In re Hudson*, 56 B.R. 415, 419 (Bankr.N. D.Ohio 1985); *In re Edwards*, 50 B.R. 933, 936–37 (Bankr.S.D.N.Y.1985).[2]

In addition to this consensus among the bankruptcy courts, each of the federal appeals courts that has considered the matter has concluded that a debtor's ability to repay his debts is a significant, if not the primary, factor in the substantial abuse inquiry. *See In re Kelly*, 841 F.2d at 915 ("we hold that the debtor's ability to pay his debts when due ... is the primary factor to be considered in determining whether granting relief would be a substantial abuse"); *In re Walton*, 866 F.2d 981, 985 (8th Cir.1989) ("We agree with the reasoning and result of the Ninth Circuit on this issue, and we therefore hold that the courts below properly considered Walton's future income in applying the 'substantial abuse' language of section 707(b)."); *In re Krohn*, 886 F.2d 123, 126 (6th Cir.1989) ("Among the factors to be considered in deciding whether a debtor is needy is his ability to repay his debts out of future earnings.... That factor alone may be sufficient to warrant dismissal."). In short, "[t]he rule adopted by the overwhelming majority of the courts considering the issue appears to be that a debtor's ability to pay his debts will, standing alone, justify a section 707(b) dismissal." *In re Kelly*, 841 F.2d at 915. Moreover, it is clear that a debtor's future income is relevant to his ability to repay his debts, and the courts of appeals for the Sixth and Eighth Circuits, as well as a number of lower courts, have explicitly included fu-

---

**2.** The bankruptcy courts within this circuit have also sanctioned the ability to pay standard, albeit in dicta. *See In re Cecil*, 71 B.R. 730, 733

(Bankr.W.D.Va.1987); *In re Kitson*, 65 B.R. 615, 620–21 (Bankr.E.D.N.C.1986); *In re White*, 49 B.R. 869, 874 (Bankr.W.D.N.C.1985).

ture income in the ability to pay inquiry. *See, e.g., In re Krohn,* 886 F.2d at 126; *In re Walton,* 866 F.2d at 985; *In re Peluso,* 72 B.R. 732, 737 (Bankr.N.D.N.Y.1987); *In re Gaukler,* 63 B.R. 224, 225 (Bankr.D.N.D.1986); *In re Grant,* 51 B.R. 385, 390–91 (Bankr.N.D.Ohio 1985).

The reason for the ability to pay standard is clear: "It is morally and legally unconscionable that a person should be able to extinguish his obligations without first making a reasonable effort to fulfill them." *In re Hudson,* 56 B.R. 415, 419 (Bankr.N.D.Ohio 1985). Indeed, allowing a debtor to escape debts that he has the ability to repay would provide a "head start" rather than the "fresh start" envisioned in Chapter 7. *In re Grant,* 51 B.R. 385, 392 (Bankr.N.D.Ohio 1985). Accordingly, this court holds that Section 707(b) includes an ability to pay test, and a debtor's future income is a relevant consideration in that inquiry.

This court is strengthened in its conclusion by the legislative history of Section 707(b). As the Court of Appeals for the Eighth Circuit has stated:

> In this case there were not committee reports on the final version of the Act. Therefore, the report on an earlier draft, S. 445, although far from conclusive, "is the best available evidence of Congress's intent in enacting Section 707(b)." *Kelly,* 841 F.2d at 914 n. 7. This report states that Section 707(b) "upholds creditors' interests in obtaining repayment where such repayment would not be a burden" on the debtor. S. Rep. No. 65 [98th Cong., 1st Sess.] 53 [ (1983) ]. "[I]f a debtor can meet his debts without difficulty as they come due, use of Chapter 7 would represent a substantial abuse." *Id.* at 54. This language seems to anticipate that a court, in considering "substantial abuse" under Section 707(b), will look to a debtor's ability to repay his creditors out of his future income.

*In re Walton,* 866 F.2d at 983. Moreover, this court agrees with the reasoning of the court of appeals in *Walton,* that in eliminating a mandatory future income threshold formula contained in an earlier version

of the Act, "Congress simply replaced a rigid test with a flexible 'substantial abuse' standard that does not foreclose the courts from considering, *inter alia,* the debtor's ability to pay his debts out of future income." *Id.; accord In re Kelly,* 841 F.2d at 914. Therefore, this court concludes, on the basis of the emerging case law and the legislative history of Section 707(b), that a debtor's ability to meet his obligations is a primary factor, although not the only factor, in the substantial abuse inquiry and that future income should be considered in this regard.

## II. The Braleys' Ability to Pay

■ Although the bankruptcy court rejected the future income test for substantial abuse, it made an alternative factual finding that "the Braley family has insufficient future income to merit barring the door in light of the circumstances of this Navy family." Opinion and Order at 763. Conceding that "there are some monthly expenditures quite out-of-line for the norm," the bankruptcy court stated that "[t]he basic factual issue ... is whether the *total picture* is abusive" and concluded that it was not. Opinion and Order at 760–761 (original emphasis). The Trustee challenges the finding that the Braleys are unable to repay their debts on the grounds that the following expenses are unnecessary or excessive:

> * monthly food and grocery bills of $700, including $150 to $200 per month in cigarette expenditures for the Braley parents and one of their daughters;
> * monthly recreation expenses of $204 plus $36 per month for cable television and $90 per month for newspapers, periodicals, and books; and
> * monthly miscellaneous expenses of $275 for Mr. Braley's maintenance aboard ship.

Opening Brief of Appellant, *Waites v. Braley,* Civil Action No. 89–639–N, at 7–8 (October 20, 1989) (hereinafter referred to as "Appellant's Brief").

Bankruptcy Rule 8013 provides that on appeal "[f]indings of fact, whether based on oral or documentary evidence, shall not

be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Although this court might have reached different conclusions, the bankruptcy court's findings of fact are not clearly erroneous. *Cf. In re R.N. Salem Corp.*, 29 B.R. 424, 428 (Bankr.S.D.Ohio 1983) ("merely showing that the court could have reached another conclusion on the evidence presented is not sufficient").

Testimony at the hearing on the Trustee's Motion to Dismiss indicated that the $700 food and grocery bill consists of $525 for food, $47 for the children's school lunches, and a mandatory payment of approximately $146 for Mr. Braley's mess bill on the U.S.S. IOWA. Amended Transcript of Proceedings, *In re Braley*, Bankruptcy Case No. 89–00567–NB, at 11–12 (United States Bankruptcy Court for the Eastern District of Virginia, May 25, 1989) (hereinafter referred to as "Tr.").[3] Mr. Braley also testified that the $525 food bill includes $150 to $200 for cigarettes for the Braleys and one of their daughters (Tr. 23).[4]

Although this court notes that the Braleys' smoking habits are quite costly, the bankruptcy court was not clearly erroneous in concluding that the Braleys' future income is insufficient to repay their obligations. Reversing the bankruptcy court on this point would in effect impose upon that court a duty to regulate the smoking habits of debtors seeking discharge under Chapter 7, an obligation this court is unwilling to impose.[5] Moreover, although the bankruptcy court found that "there are some monthly expenditures quite out-of-line for the norm," it concluded that "the *total picture* is [not] abusive," Opinion and

Order at 760 (original emphasis), and this finding is not clearly erroneous.

With respect to the recreation expenses of $204 per month, Mr. Braley explained that "[w]hen I'm—when we're home and the girls and I and my wife will go out usually both pay days during the month, and for a family of four to eat out twice a month or go to a movie, plus the recreation, the girls' softball and their type of things they are interested in and the Girl Scouts" (Tr. 15). Regarding the periodical expenses of $90 per month, he stated that "[t]here's items that we listed under there that we didn't know where to list those, and we—our attorney told us to list them there because there was no real category for them. When you figure, well, the newspaper's something like ten bucks a month and The Navy Times is 17. There's about $25.00 or so in periodicals, but the girls' expenses at school to a certain extent were added in there. Their books, papers, that type of stuff was added in there, and my wife added in items that when I'm gone, stamps, that type of stuff was added in there" (Tr. 14). Regarding the $275 for Mr. Braley's maintenance on ship, he testified that "[t]he 146 [mess bill] is included in the other and the total 200, and that's for my maintenance for myself, for cigarettes, shaving cream, for uniform parts, for just personal needs" (Tr. 12). In light of Mr. Braley's explanations of these expenditures and the bankruptcy court's opportunity to judge his credibility, the finding that the Braleys are unable to pay their debts from future income is not clearly erroneous.

### III. The Role of Bad Faith in the Substantial Abuse Inquiry

In denying the Trustee's Motion to Dismiss, the bankruptcy court found that

---

3. Mr. Braley explained that "[t]he $146 is something that I have to pay to the ship. They maintain the food for the ward room and it doesn't matter if I eat one meal or I eat three meals. I pay for it. Even if I'm not there I pay for it" (Tr. 16). He also testified that the amount of the mess bill varies slightly "depending upon where we go and where we're at because of the dignitaries that come aboard" (Tr. 12).

4. The Braley parents each smoke two cartons of cigarettes per week and their daughter smokes one carton per week (Tr. 23).

5. The Trustee urges this court to consider the Braleys' cigarette expenditures a recreational expense. *See In re Peluso*, 72 B.R. 732, 738 (Bankr.N.D.N.Y.1987). Regardless of the categorization of these expenditures, the bankruptcy court's findings are not clearly erroneous.

"[s]ubstantial abuse does not exist in this case. There is no dishonesty, no evil intent demonstrated, no string of prior bankruptcies, no failure to fully disclose, no misrepresentation." Opinion and Order at 763. The Trustee argues that neither bad faith nor fraud is a prerequisite to a finding of substantial abuse. Alternatively, the Trustee urges that the Braleys have exhibited sufficient bad faith in this and the prior bankruptcy proceedings to bar them from relief under Chapter 7.

■ This court agrees with the Trustee that neither bad faith nor fraud is an element required for a finding of substantial abuse. As discussed above, the emerging rule is that a debtor's ability to repay his debts from future income, by itself, may preclude discharge of those debts under Chapter 7. *See supra* at 214–215. Courts have so construed Section 707(b) because it was "aimed primarily at stemming the use of Chapter 7 relief by unneedy debtors," and a threshold requirement of bad faith "would drastically reduce the bankruptcy courts' ability to dismiss cases filed by debtors who are not dishonest, but who also are not needy." *In re Walton*, 866 F.2d 981, 983 (8th Cir.1989); *see also In re Krohn*, 886 F.2d 123, 126 (6th Cir.1989) ("Substantial abuse can be predicated upon *either* lack of honesty *or* want of need.") (emphasis added); *In re Hudson*, 56 B.R. 415, 420 (Bankr.N.D.Ohio 1985) (court may examine whether debtor has exhibited good faith and has made full and accurate disclosure, but primary focus should be ability to pay). Indeed, a threshold requirement of bad faith would have the anomalous result of precluding dismissal and allowing discharge when, for example, a debtor

through ignorance or inadvertence files under Chapter 7, although he is in fact able to repay his debts under a Chapter 13 plan or outside of bankruptcy. Moreover, Sections 523 and 727 of the Bankruptcy Code allow dismissal for fraud and misrepresentation, and a narrow construction of Section 707(b) would render it superfluous in light of these provisions. *In re Walton*, 866 F.2d at 983. Therefore, this court holds that although courts may consider bad faith or fraud in the 707(b) inquiry, such a showing is not a prerequisite to a finding of substantial abuse.

■ The bankruptcy court found "no dishonesty, no evil intent demonstrated, no string of prior bankruptcies, no failure to fully disclose, [and] no misrepresentation" on the part of the Braleys. Opinion and Order at 763. The Trustee challenges this finding on the ground that "[p]revious filings, substantial debt incurred while the previous bankruptcy was pending, inflated claims for household expenses and inability to substantiate the claims all combine to demonstrate substantial abuse in this case." Appellant's Brief at S6–S7. Although this court might have reached a different result on the evidence in this case, the bankruptcy court's findings are not clearly erroneous.[6]

With respect to previous filings, the Braleys' South Carolina bankruptcy action had been dismissed for substantial abuse just six months prior to the filing of the present action. Appellees' Brief at S3.[7] Mr. Braley testified at the hearing on the Motion to Dismiss and reiterates in his brief that his military assignments significantly inter-

---

**6.** Although the issue of bad faith or fraud may be viewed as a mixed question of law and fact, a finding in this regard is subject to the "clearly erroneous" standard of review. *In re Holi–Penn, Inc.*, 535 F.2d 841, 844 (3d Cir.1976) (Chapter X proceeding); *see In re Krohn*, 87 B.R. 926, 930 (N.D.Ohio 1988) (Chapter 7 proceeding), *aff'd*, 886 F.2d 123 (6th Cir.1989); *In re Business Finance Corp.*, 451 F.2d 829, 834 (3d Cir.1971) (Chapter X proceeding: "The appellant banks concede on these appeals, as they must, that 'a finding of good faith is not to be reversed unless clearly erroneous.'"); *cf. Holiday v. Tennessee Student Assistance Corp.*, 75 B.R. 265, 266 (M.D.

Tenn.1986) (Chapter 13 proceeding: "Whether a debtor has acted in good faith is quite simply a factual determination.").

**7.** The Trustee indicated in his Motion to Dismiss that "[a]t a Section 341 hearing held in the present case on March 21, 1989, debtor testified that he had filed a bankruptcy in 1975 in South Carolina, which had been dismissed." Motion to Dismiss at 2. As the Trustee has not raised this bankruptcy in his brief or at oral arguments and as the circumstances of the dismissal have not been made known to the court, this court does not address the matter.

fered with his ability to pursue the prior action: he was transferred from Hawaii to San Diego and then to Norfolk (Tr. 16), and although his wife established a residence in South Carolina and the case was transferred there on his motion, Mr. Braley was at sea for all but fifteen days of the nine months that his wife resided in that state (Tr. 20). This court is troubled by this explanation in light of the fact that counsel for the Braleys conceded at oral arguments that they were represented by counsel and had notice of the prior proceedings. However, the bankruptcy court had an opportunity to judge the credibility of the witness, and a debtor is legally entitled to refile under Chapter 7 six months following dismissal of a prior petition (Tr. 6). Therefore, this court cannot conclude that the bankruptcy court's findings are clearly erroneous.[8]

The Trustee also points to more than $18,000 of debt incurred during the prior bankruptcy as evidence of the Braleys' bad faith. However, Mr. Braley testified that approximately $10,000 of this debt consisted of rental payments on two leases that Mrs. Braley mistakenly believed she could terminate if her husband were transferred (Tr. 18–19, 24). The record also reveals that utility and medical bills account for another $1500 of this debt, *see* Debtors' Schedule A, and the mere fact that "[m]any debts were for purchases of consumer items, magazine and newspaper subscriptions and bad checks" does not indicate that the purchases were made in bad faith. Although the Trustee complains of a $9000 loan taken during the prior proceedings, he has not demonstrated that the loan was obtained fraudulently or in bad faith, and Mr. Braley testified that he thought the proceeding had been dismissed when the loan was obtained (Tr. 17). In short, the bankruptcy court could reasonably have concluded that the debt incurred by the Braleys was the product of "a mild extravagance" and the unique transiency of military life rather than bad faith or evil intent.

Finally, the Trustee notes that a tendency to overstate expenditures is considered bad faith. Although the Trustee maintains that "the claims of expenditures for the Braleys simply cannot be supported," Appellant's Brief at 11, he identifies no specific instances of misrepresentation in the Braleys' current budget. In fact, the Trustee's representative asked for substantiation of only one expense (telephone bills) at the hearing on the Motion to Dismiss, and Mr. Braley indicated that counsel had copies of most of the monthly money orders (Tr. 10–11). Moreover, while counsel for the Braleys conceded at the hearing that the original budget was "not clearly reflective of what they actually do earn, what the actual take home is and what actual expenditures are" (Tr. 5), the Braleys offered an amended budget and the Trustee's representative examined Mr. Braley at length on the items contained in the amended budget and the reasons for the discrepancies (Tr. 7–20). In light of the bankruptcy court's opportunity to evaluate the demeanor and credibility of the witness, its finding of no bad faith and no misrepresentation is not clearly erroneous.[9]

### IV. Consideration of Factual Matters Not in Controversy

Finally, the Trustee takes issue with the bankruptcy court's consideration of the Braleys' support obligations. In the course of the Opinion and Order, the bankruptcy court stated:

> There are two children in the Braley home. One is unemployed and in its motion to dismiss the case for substantial abuse they argue "U.S. Trustee believes that debtor is not legally responsible for the health and welfare of this son." I can't wait to get home and tell this to my son who just turned eighteen! Dear Trustee, there may be good reason for keeping them home after they reach their majority. We do not know what the Braley story is, but we say with great emphasis that a family has the

---

8. *See supra* note 6.

9. *See supra* note 6.

*basic human right* of keeping at home even a problem child, if that's the case. Opinion and Order at 761 (original emphasis). In an accompanying footnote, the bankruptcy court stated that "[i]f the U.S. Trustee is offering employment to the Braley eighteen year old, please put it in writing." Opinion and Order at note 6.

There was no evidence before the bankruptcy court that the Braleys had children who had reached the age of majority; rather, the record indicates that the Braley children are two minor daughters (Tr. 11–15, 35). The Braleys insist in their brief that "the Bankruptcy Court gratuitously took note of the fact that the Braleys soon would no longer be legally responsible to support their daughters.... The Bankruptcy Court's efforts to look ahead to the circumstances of the Braley family is exactly what it should be expected to do" in assessing the availability of future income to repay debts. Appellees' Brief at 15. However, it is clear that the bankruptcy court was *not* looking ahead to the circumstances of the Braley family: there is no evidence that the Braleys have a son, no evidence that either of their children is eighteen, and no evidence concerning either child's employment status. In addition, the statement that the bankruptcy court attributed to the Trustee is found nowhere in the motion to dismiss the Braleys' case.

It appears that, as the Trustee suggested at oral arguments, the bankruptcy court confused the facts of the Braley case with those of another before it. However, although these factual findings are clearly erroneous, the error is harmless. The Braleys in fact have two children and, because these children are minors, the Braleys are obligated to support them. Therefore, the expense of supporting two children was properly considered by the bankruptcy court, although the bankruptcy court was mistaken about the children's ages.

### V. Conclusion

In summary, this court holds that the bankruptcy court incorrectly determined, in two respects, the legal standard to be used in the substantial abuse determination.

First, for the reasons discussed above, a debtor's ability to repay his debts from future income is a relevant consideration in the substantial abuse inquiry. Second, a debtor's fraud or bad faith is a permissible consideration for a finding of substantial abuse, but it is not a prerequisite to such a finding.

However, this court does not find that the bankruptcy court's alternative finding that the Braleys are unable to repay their debts from future income is clearly erroneous, nor does this court find that the bankruptcy court's finding that the Braleys did not act fraudulently or in bad faith is clearly erroneous. Finally, although the bankruptcy court's findings regarding the ages and support of the Braley children are clearly erroneous, the error is harmless. Accordingly, this court AFFIRMS the decision of the bankruptcy court denying the Trustee's Motion to Dismiss the Braleys' Chapter 7 petition for substantial abuse.