**In re Wayne Thomas WISHER, Jr.,
SSN 549–57–4098, Debtor.**

**Bankruptcy No. 98–11013 MSK.**

United States Bankruptcy Court,
D. Colorado.

May 7, 1998.

Stephen C. Sutton, Golden, Colorado, for Debtor.

## MEMORANDUM OPINION AND OR-DER DISMISSING CASE PURSU-ANT TO 11 U.S.C. § 707(b)

MARCIA S. KRIEGER, Bankruptcy Judge.

THIS MATTER comes before the Court for determination of whether this case should be dismissed for substantial abuse in accordance with 11 U.S.C. § 707(b). By Order of February 18, 1998, the Debtor was directed to show cause in writing why the case should not be dismissed (OSC). He filed a response on March 10, following which an evidentiary hearing was conducted on April 15, 1998. Having reviewed the file, the Response, and the evidence presented at hearing, the Court finds and concludes as follows:

## I. JURISDICTION

This Court has jurisdiction in this matter pursuant to 28 U.S.C. § 157(a) and (b) and § 1334(a) and (e). This is a core matter in accordance with 28 U.S.C. 157(b)(2)(A).

## II. FACTS

1. The Debtor, Wayne Thomas Wisher, Jr., filed a voluntary petition under Chapter 7 on January 29, 1998. The immediate cause for the bankruptcy was service of a wage garnishment by Mr. Wisher's former spouse, Heather R. Wisher, for collection of a judgment entered in their divorce. The judgment was for the Debtor's liability for a house purchased in 1995.

2. Mr. Wisher scheduled $41,717.76 in debts. These include priority debt of $10,-241.34 for 1996 Colorado and Federal taxes and $31,476.42 in unsecured debts. No secured debt is listed. Of the unsecured debt, $14,231.58 is owed on a student loan and $10,075.00 is owed to Heather R. Wisher. The remaining claims are for credit cards, one medical expense, and attorney fees.

3. According to Mr. Wisher's Statement of Affairs, he earned $45,500.00 during 1997 (approximately $3,790.00 per month gross) as a superintendent in Alvarado Construction Company. On his Schedule J, Mr. Wisher lists himself as divorced with no dependents, but at the hearing Mr. Wisher testified that he resided with his fiancée and her minor daughter prior to and at the time he filed his petition. Mr. Wisher's Schedules I and J reflect gross monthly income of $3,553.33, net income of $2,657.44, and expenses of $1,145.00. This leaves monthly surplus disposable

income of $1,512.44. Such disposable income would retire all of Mr. Wisher's scheduled debts within 28 months.

4. Approximately a month and a half after the bankruptcy filing and three days before filing his Response to the OSC, Mr. Wisher married. With his Response, he included a new budget reflecting $2,453.02 net income, his wife's income of $1,280.00, and total household expenses of $3,402.00. This budget included newly disclosed expenses for transportation, recreation, a horse, dogs, credit cards, and child care.

5. At the hearing on the OSC, Mr. Wisher proffered Exhibit 1 which was unsigned, amended Schedules I and J showing his net income of $2,331.25, no income for Mrs. Wisher, and expenses of $2,875.00. These expenses deleted payment on credit cards, but included new estimates for rent, recreation, and day care as well as transportation, horse, and dog expenses reflected in the budget tendered with the Response.

6. Mr. Wisher's testimony at the hearing did not corroborate any of the three prior income or expense statements. He testified that his monthly net income was $2,400.00 per month, his wife's income was $1,180 per month, and that the expenses reflected on the original Exhibit J were one-half of the actual household expenses. This would make the couple's actual expenses $2,290.00. Expenses for the horse, daycare, and two of three dogs are attributable to Mrs. Wisher and her daughter. Prior to the bankruptcy filing, Mr. Wisher deposited his paychecks into his fiancée's checking account to avoid garnishment. This practice has continued postpetition. Apparently, the Wishers have no agreement as to their contribution to mutual expenses. All expenses including those for Mrs. Wisher and her daughter are paid from the single bank account. Mr. Wisher does not believe Mrs. Wisher receives child support, but he does not know why not. He desires to contribute his surplus monthly income to his new "family expenses."

## III. ANALYSIS

With the enactment of the bankruptcy amendments and Federal Judgeship Act of 1984, § 707 of the Bankruptcy Code was amended to provide for dismissal for substantial abuse of Chapter 7 cases which involve primarily consumer debts. Section 707(b) now provides:

After notice and a hearing, the court, on its own motion or on a motion by the United States Trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

Section 707(b) may not be used by creditors who oppose a debtor's request for bankruptcy relief; it can be invoked only by the court on its own motion or by the United States Trustee. In applying § 707(b) the Court must determine three elements:

1. That the debtor is an individual;

2. That the case involves primarily consumer debts; and

3. That relief under Chapter 7 would be a "substantial abuse" of the provisions of Chapter 7.

All of these factors must be evaluated with a presumption in favor of granting the relief requested by a debtor.

There is no dispute that the Debtor in this case is an individual or that his debts are primarily consumer debts. Mr. Wisher does not dispute that his debts are primarily consumer debts. Although tax obligations are not considered consumer debts, there is legal authority for characterization of both student loans and prior marital obligations as consumer debts. See Stewart v. United States Trustee, 215 B.R. 456 (10th Cir. BAP 1997); In re Vianese, 192 B.R. 61, 68 (Bankr. N.D.N.Y.1996); In re Traub, 140 B.R. 286, 288 (Bankr.D.N.M.1992); In re Palmer, 117 B.R. 443 (Bankr.N.D.Iowa 1990). Mr. Wisher presented no evidence which would bear on the characterization of the student loan, and Mr. Wisher's testimony with regard to his marital debt is that it arose from his purchase of a home in 1995, a consumer debt. Assuming all unsecured debts are consumer

debts, they comprise more than 75% of the total debts scheduled. Thus, the only issue in dispute is whether allowing Mr. Wisher relief under Chapter 7 would constitute a substantial abuse of the provisions of the chapter.

■ The term "substantial abuse" is not defined in the Code. Legislative history indicates that this provision was aimed at stemming the use of Chapter 7 by consumer debtors who were able to repay their debts. Cong.Rep. No. 65, 9th Congress. First Sess. 3 (1983). Most courts conclude that this provision was enacted in response to an increasing number of Chapter 7 bankruptcies filed by debtors who had primarily consumer debts as well as an ability to repay them. Dismissal for substantial abuse was intended to favor repayment of creditors where such repayment would not be a burden to a debtor. *See In re Krohn*, 886 F.2d 123, 126 (6th Cir.1989); *In re Walton*, 866 F.2d 981, 983 (8th Cir.1989), *Zolg v. Kelly (In re Kelly)*, 841 F.2d 908, 914 (9th Cir.1988).

> In essence, § 707(b) allows a bankruptcy court to deal equitably with the unusual situation where an unscrupulous debtor seeks to enlist the court's assistance in a scheme to take unfair advantage of his creditors; it serves notice upon those tempted by unprincipled accumulation of consumer debt that they will be held to at least a rudimentary standard of fair play and honorable dealing.

*Krohn, supra* at 126.

In determining whether a given case is substantially abusive, some courts focus entirely or primarily upon a debtor's ability to repay debts under Chapter 13 or outside of bankruptcy. *See, e.g., United States Trustee v. Harris*, 960 F.2d 74 (8th Cir.1992); *In re Walton, supra; In re Kelly supra; In re Struggs*, 71 B.R. 96 (Bankr.E.D.Mich.1987); *In re Edwards*, 50 B.R. 933 (Bankr.S.D.N.Y. 1985). Some courts also analyze the debtor's good faith and motivation for filing under Chapter 7. *See, e.g., In re Cord*, 68 B.R. 5 (Bankr.W.D.Mo.1986); *In re Hudson*, 56 B.R. 415 (Bankr.N.D.Ohio 1985). A third group of courts evaluate substantial abuse on a case-by-case basis in light of the totality of the circumstances. *See, e.g., Green v. Sta-*

*ples (In re Green)*, 934 F.2d 568, 572 (4th Cir.1991); *Waites v. Braley*, 110 B.R. 211 (E.D.Va.1990); *In re Krohn, supra; In re Walton, supra* at 984–85; *In re Vesnesky*, 115 B.R. 843, 847–48 (Bankr.W.D.Pa.1990); *In re Keniston*, 85 B.R. 202 (Bankr.D.N.H. 1988).

■ The Tenth Circuit has not yet adopted a standard for determining substantial abuse, but the totality of the circumstances approach was used by the Tenth Circuit Bankruptcy Appellate Panel (BAP) in *Stewart v. United States Trustee, supra.* In *Stewart*, the BAP considered the following factors:

1. Circumstances surrounding the bankruptcy filing (*i.e.*, was it induced by emergency, sudden illness, disability, unemployment, etc.);

2. Whether the debtor incurred cash advances and made consumer purchases far in excess of his or her ability to pay;

3. Whether the debtor's budget is excessive or unreasonable;

4. Whether the debtor's schedules and statement of income and expenses reasonably and accurately reflects his or her true financial condition;

5. Whether the petition was filed in good faith; and

6. Whether the debtor has the ability to repay.

*Stewart* at 466.

The totality of the circumstances approach allows flexibility in dealing with each individual case. It includes analysis of a debtor's ability to repay debt as well as the statutory presumption in favor of the debtor's request for relief. In accordance with the guidance of the Bankruptcy Appellate Panel of the Tenth Circuit, I apply the totality of the circumstances test in this case.

■ This bankruptcy was not filed in the aftermath of any sudden emergency or decline in income. Instead, it appears to have grown out of the dissolution of Mr. Wisher's marriage to Heather Wisher. No evidence was presented of prepetition collection action by any creditor other than Heather Wisher.

Prior to the bankruptcy filing, Mr. Wisher attempted to shield his earnings from her collection by depositing them in his (then) fiancée's checking account. The bankruptcy was filed when Heather Wisher served a wage garnishment on Mr. Wisher's employer.

Mr. Wisher's Schedules and Statement of Income and Expenses do not reasonably and accurately reflect his true financial condition. "Those who seek the shelter of the bankruptcy code must provide complete, truthful and reliable information." *In re Calder*, 907 F.2d 953, 956 (10th Cir.1990). Mr. Wisher has made at least four representations as to his income and expenses, none of which are consistent. The chart attached summarizes such representations revealing inconsistencies in gross income, net income for both Mr. and Mrs. Wisher, total household expenses, and Mr. Wisher's share. From the record in this case, including both the case file and the evidence offered at hearing, the Court cannot reconcile the discrepancies, however several general conclusions can be drawn.

First, Mr. Wisher has not fulfilled his duty as a debtor to provide complete, truthful, and reliable information. The most charitable interpretation of such inconsistent financial information is that Mr. Wisher does not know and has not disclosed his financial circumstances as required. A less favorable view is that Mr. Wisher has engaged in situational disclosure, adjusting his income and expenses to suit his purposes at a given point in time. At the time he filed for bankruptcy, he did not want to involve his fiancée and therefore did not disclose his living arrangements, the income of his fiancée, and the expenses relating to her and her child. But after the issue of his surplus income was raised in the OSC, Mr. Wisher disclosed his living arrangements and the substantially greater living expenses which absorb all of his income.

Second, despite the inconsistencies in Mr. Wisher's disclosures, he has monthly income which exceeds his reasonable expenses. According to Mr. Wisher's testimony, the original Schedule J reflected a 50% contribution to the household expenses, not including those incurred solely by his wife and her daughter. In the absence of an agreement between the Wishers, Mr. Wisher's contribution of 50% to joint household expenses is reasonable. Monthly expenses of $1,145 are also reasonable for a single person living on a tight budget. Given these expenses, Mr. Wisher has surplus monthly income of $1,512.44 which, if used to pay prepetition debts, would pay the principal balance owed on all debts within 28 months.

Third, Mr. Wisher has voluntarily undertaken to pay certain expenses for his wife and her daughter for which he has no legal obligation. These include the entirety of the rental payment, transportation costs, charges for horse boarding, dogs, and child care. Rather than committing his surplus income to payment of prepetition obligations, Mr. Wisher prefers to devote the income to expenses incurred by his new wife and her child. Although such expenses may not be extravagant compared to those that might be incurred by debtors with substantially greater income, they are nonetheless expenditures unrelated to Mr. Wisher's needs.

The Court cannot fault Mr. Wisher's generosity and desire to assume financial responsibility for his new family, but he relies on bankruptcy protection to do so. Invoking bankruptcy protection requires consideration of the rights of Mr. Wisher's prepetition creditors. ("It is difficult to fault the Debtors for trying to assist their children and grandchildren. However, such actions should not be taken at the expense of the Debtor's creditors." *In re Heasley*, 217 B.R. 82 (Bankr.N.D.Tex.1998).) Bankruptcy is intended to provide relief to honest debtors who cannot pay their debts. It is not intended to give debtors who have an ability to pay their prepetition obligations protection from their creditors in order to give income to individuals they prefer. In short, a debtor who can pay prepetition creditors is not entitled to a financial "fresh start" simply to accommodate a marital "fresh start."

The motivation behind this bankruptcy case becomes increasingly suspect upon review of its effect. Assuming that both the 1996 state and federal taxes and the student loan are nondischargeable (§ 523(a)(1) and § 523(a)(8), respectively), only $17,244.84 of unsecured debt could be discharged. Over

half of that sum ($10,075.00) is owed to Mr. Wisher's former spouse. The remaining debts are for credit cards, attorney fees, and a medical expense. Contrary to the most recent budgets submitted, it is likely that a portion of Mr. Wisher's income would be earmarked to pay his wife's and stepdaughter's expenses will be used to pay the nondischargeable debts. It is difficult to justify why this income should not also be used to pay the remaining unsecured debts. Given the large proportion of nondischargeable debts, Mr. Wisher's failure to provide complete, truthful, and reliable information as to his financial circumstances, his prepetition behavior with regard to the claim of his former spouse and the circumstances surrounding the bankruptcy filing, I conclude that there is substantial doubt as to whether this petition was filed in good faith.

While there is no evidence that Mr. Wisher incurred cash advances or made consumer purchases in excess of his ability to pay shortly before the bankruptcy filing, and Mr. Wisher is entitled to the presumption of entitlement to the benefits of Chapter 7, I conclude, based upon the totality of the circumstances, that to grant Mr. Wisher relief would be a substantial abuse of the purposes and provisions of Chapter 7. Mr. Wisher has other alternatives available for dealing with his creditors both inside and outside of bankruptcy.

**IT IS THEREFORE ORDERED** that pursuant to 11 U.S.C. § 707(b), this case is **DISMISSED.**

Wayne Thomas Wisher, Jr., Bankruptcy Case No. 98–11013

| | Monthly Income | | Monthly Expenses | | Marital Status |
|---|---|---|---|---|---|
| | Debtor | Fiancée (Wife) | Total | Particular Item | |
| Statement of Financial Affairs Q1—Income 1997 $45,500 | $3,791.66 gross | | | | |
| Schedules I and J Filed with petition | $3,553.33 gross $2,657.44 net | –0– | $1,145.00 | Rent/Mtg $ 575<br>Transportation $ –0–<br>Recreation $ 80 | Divorced<br>No Dependents |
| Debtor's Response to Order to Show Cause | $2,453.02 net | $1,280.00 | $3,402.00 | Rent/Mtg $1,050<br>Transportation $ 160<br>Recreation $ 400<br>Horse $ 120<br>Dogs $ 75<br>Credit Cards $ 100<br>Child Care $ 500 | Newly Married (3/7/98) |
| Hearing—Exhibit 1: Unsigned Amended Schedules I and J | $2,331.25 net | $–0– | $2,875.00 | Rent/Mtg $1,100<br>Transportation $ 160<br>Recreation $ 80<br>Horse $ 120<br>Dogs $ 75<br>Day Care $ 200 | Married, one Dependent–new wife's daughter– Torrie Kordick, 9 |
| Hearing Testimony of Debtor | $2,400.00 net | $1,180.00 | $2,290.00 (double of amount on original Schedule J) | Both incomes deposited to wife's account. Wife pays her own car payment and credit cards. Wife receives no child support. | Married, one Dependent—new wife's daughter— Torrie Kordick, 9 |