### In re Jamesetta Herrington WILKES, Debtor.

### Bankruptcy No. 89–24957–B.

United States Bankruptcy Court, W.D. Tennessee, W.D.

Oct. 3, 1989.

Sidney Feuerstein, Memphis, Tenn., for debtor.

Madelyn Scott, Atty., U.S. Trustee's Office, Memphis, Tenn.

Richard T. Doughtie, III, Memphis, Tenn., Chapter 7 Trustee.

## MEMORANDUM OPINION AND ORDER ON MOTION OF U.S. TRUSTEE TO DISMISS CASE UNDER § 707(b)

WILLIAM H. BROWN, Bankruptcy Judge.

This cause is before the Court on the motion of the U.S. Trustee to dismiss the debtor's Chapter 7 petition pursuant to § 707(b) of the Bankruptcy Code. According to the U.S. Trustee, the debtor has what appear to be primarily consumer debts and is seeking Chapter 7 relief where there are indications of an ability to pay a substantial portion of claims. Therefore, at issue in this proceeding is whether the nature of the debtor's debts, combined with the apparent existence of disposable income amount to "substantial abuse" of the Bankruptcy laws and thus preclude her from obtaining Chapter 7 relief under those laws.

This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). The following constitutes findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

The debtor filed her voluntary petition for Chapter 7 relief on June 21, 1989. At the same time, she filed her Schedules and Statement of Financial Affairs. From these documents, the debtor's debts appear to be primarily "consumer debts" as that term is defined in the Bankruptcy Code.[1] Specifically, the debtor lists no priority

---

1. Section 101(7) of the Code defines consumer debts as "debt incurred by an individual primar- ily for personal family, or household purpose."

claimants such as the Internal Revenue Service. Her secured debts listed on Schedule A–2 include obligations of $9,000.00 for an automobile; $937.65 for "household goods" and $250.00 for a "video cassette recorder." Her unsecured debts include a $1,392.17 obligation to Visa; a $108.00 obligation to Methodist Hospital; a $134.14 obligation to CitiCorp; a $288.00 obligation to Travelers Insurance; a $25.00 obligation to Field Publications; and an $801.24 obligation to Bank One Columbus.

The debtor's Statement of Intentions reflect that the debtor intended at the time of filing her Chapter 7 to reaffirm her obligations to the Schedule A–2 claimants holding as security the items listed above. Her "Schedule of Current Income and Expenditures" reflects monthly net income of $1,150.00 and expenditures of $1,033.75. Thus, excess monthly income in the amount of $116.25 is shown.

The U.S. Trustee filed the instant motion for dismissal on July 14, 1989. At the hearing on the motion, the debtor testified that her monthly apartment rental had increased from $285.00 as shown on her schedules to $310.00 and her utilities increased from $65.00 to $80.00. She further testified that she has been divorced for nine years and receives child support payments on a regular basis from her former husband at $83.00 every two weeks. The payments are for her children aged 12 and 17 years. The debtor also testified that the family's clothing expense averaged $200.00 per month, an item not reflected on her filed schedule.

In its entirety, § 707(b) provides:

[a]fter notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter [chapter 7] whose debts are primarily consumer debts if it finds that the granting of [chapter 7] relief would be a sub-stantial abuse of this chapter. There shall be a presumption in favor of granting the [chapter 7] relief requested by the debtor.

Clearly, the debtor in this case is an individual debtor. A combination of the debtor's testimony and her schedules establish that the debtor has minimal excess disposable income. Moreover, the evidence supports a finding that her debts are "primarily consumer debts" in that 100% of the total amount of indebtedness appears to be for consumer purposes. *See, e.g., In re Bell,* 65 B.R. 575 (Bankr.E.D.Mich.1986) (where only 31% of debt is consumer debt, debts were not "primarily consumer debts"); *In re Kelly,* 841 F.2d 908 (9th Cir.1988) ("primarily consumer debts" exist where more than half of the dollar amount of debts is consumer debt).

Consequently, the question becomes whether affording the debtor Chapter 7 relief would result in "substantial abuse" of that Chapter.

Unfortunately, the Bankruptcy Code provides no definition of "substantial abuse" for purposes of § 707(b) construction, rendering the statute ambiguous and not susceptible to the "plain meaning" rule of statutory construction. *In re Keniston,* 85 B.R. 202 at 214 (Bankr.D.N.H.1988). Thus, the bankruptcy courts have been relegated to the adoption of an "I know it when I see it" approach analogous to that employed by Justice Potter Stewart in his attempt to define pornography. *Jacobellis v. Ohio,* 378 U.S. 184 at 197, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964). Not surprisingly, this approach has led to widely divergent holdings,[2] although the apparent majority tends to require dismissal of individual Chapter 7 cases if it can be shown that the debtor has the ability to repay debts or a portion thereof from future income. *See, e.g., In re Kelly,* 841 F.2d 908 (9th Cir.1988); *In re Struggs,* 71 B.R. 96 (E.D.Mich.1987); *In re Edwards,* 50 B.R. 933 (Bankr.N.Y.1985); *In re Renner,* 70 B.R. 27 (Bankr.D.N.D.

---

**2.** *See, generally,* Wells and Kirtz, "A Critical Analysis of Bankruptcy Code Section 707(b)," 36 Clev.St.L.Rev. 385 (1988); Breitowitz, "New Developments in Consumer Bankrupcies: Chapter 7 Dismissal on the Basis of 'Substantial Abuse,' " (2 installments) 59 Am.Bankr.L.J. 327, 60 Am. Bankr.L.J. 33 (1985–1986).

1987); *In re Strong*, 84 B.R. 541 (Bankr.N. D.Ind.1988); *In re Grant*, 51 B.R. 385 (Bankr.N.D.Ohio 1985); *In re White*, 49 B.R. 869 (Bankr.W.D.N.C.1985). This standard has developed from a presumption that Congress intended that a large excess income or the ability to pay a significant amount of consumer debts was indicative of substantial abuse. *In re White*, 49 B.R. at 874. Such a presumption arises from the sparse legislative history which, upon cursory examination, indicates that the statute was designed to curb consumer abuses. However, while these courts pronounce that the ability to repay is the primary factor for determining whether substantial abuse exists and requires dismissal of the case pursuant to § 707(b), in some instances "some egregious circumstance" is additionally required as a factor. *See, e.g., In re Shands*, 63 B.R. 121 at 124 (Bankr.E.D.Mich.1985).

Notwithstanding these majority holdings, § 707(b) has met with significant criticism. For example, the Bankruptcy Court for the Western District of Missouri has recently concluded, in reliance on an opinion by the United States District Court in its district, that because § 541(a)(6) of the Bankruptcy Code exempts future earnings from the property of a Chapter 7 estate, future earnings and thus "ability to pay" may not be considered for purposes of determining whether a debtor's Chapter 7 filing constitutes "substantial abuse." Accordingly, under this view § 707(b) is, in effect, a "dead letter." *In re Antal*, 85 B.R. 838 at 841 (Bankr.W.D.Mo.1988), relying on *In re Brady*, 86 B.R. 616 (W.D.Mo.1987).

Moreover, the constitutionality of the statute has been questioned with assertions that it is "void for vagueness" and affords inadequate due process protection. *In re Kelly*, 841 F.2d at 916–17. These assertions were overruled by the Ninth Circuit's determination that the statute, rules and case law provide adequate notice of the matters to be considered at a § 707(b) hearing. *Id.* at 916. In addition, that Court concluded that although the statute's lack of definition for substantial abuse may present an "undefined standard for decision" such a statute may derive much meaningful content from its legislative purpose, its factual background, and its statutory context. *Id.*, citing *American Power & Light Co. v. SEC*, 329 U.S. 90 at 104, 67 S.Ct. 133 at 142, 91 L.Ed. 103 (1946).

The debtor's objection to the statute's grant of discretion to the bankruptcy judge to institute dismissal proceedings as being violative of due process was also rejected by the *Kelly* Court which concluded that, as with "sua sponte orders concerning jurisdiction, contempt, and sanctions, the court acquires no stake in the litigation merely by ordering a hearing." *In re Kelly*, 841 F.2d at 917. This concern has also been mitigated by the 1986 Amendment to the Code allowing the United States Trustee to move for dismissal.

Having weathered these constitutional challenges, the statute's application solely to individual consumer debtors, coupled with the interpretation that "substantial abuse" equates to an ability to pay has more recently come under scrutiny as violative of the equal protection clause as incorporated by the Fifth Amendment to the United States Constitution in the scholarly opinion *In re Keniston* authored by Bankruptcy Judge James Yacos of New Hampshire. 85 B.R. 202 at 205 (Bankr.D.N.H. 1988). Judge Yacos raised the equal protection question with regard to § 707(b) primarily because almost all of the case decisions construing the section have read it to require dismissal as a substantial abuse of Chapter 7 if the debtor has the ability to repay from future income those debts for which a Chapter 7 discharge is sought. *In re Keniston*, 85 B.R. at 205.

The constitutional question is raised here only because § 707(b) singles out for this restriction upon the right to a chapter 7 discharge only those individual debtors' "whose debts are primarily consumer debts ..." More specifically, the possible denial of equal protection stems from the fact that under the reported decisions construing the statute *only* debtors having such debts are required to show that they are not "abusing" the chapter because they *need* chapter 7 relief, i.e., that

they do not have the ability to repay their debts out of future income.

No logical reason appears evident, if § 707(b) is truly designed to deal with abuse of chapter 7 in terms of the debtors seeking chapter 7 discharge when they have the ability to repay their debts, as to why such dismissal for "abuse" defined in those terms should not apply to all individual debtors seeking chapter 7 relief.

(Emphasis in original.) *Id.*

In the pages that follow the posing of this question, Judge Yacos provides a thorough analysis of the Supreme Court's "rational basis" test which he concludes is the level of judicial scrutiny applicable to § 707(b), given that it "involves" socio-economic regulation and does not involve any "suspect class," by application of that test to § 707(b) and its legislative history. *Id.* at 207–212. Judge Yacos' analysis questions whether there is any reason apparent in either the legislative history or otherwise to support a finding that Congress had a "logical and rational basis for discriminating between classes of similarly-situated persons in providing an under-inclusive classification of those persons to be subjected to restriction on legal benefits and [Chapter 7] relief." *Id.* at 212. However, this Court agrees with Judge Yacos that such serious Constitutional questions may be avoided by "an appropriate statutory construction of the language of § 707(b), in the context of its legislative history, the context of the other pertinent provisions of the Bankruptcy Code, and in the context of the history of our bankruptcy laws as they apply to individual debtors and discharge relief since the enactment of the Bankruptcy Act of 1898." *Id.*

This Court does not believe that § 707(b) requires an overly broad construction. In reality, all that § 707(b) does is "vest ... in the bankruptcy court discretion to dismiss a consumer case when the filing is abusive." 4 King, *Collier on Bankruptcy,* ¶ 707.04 (15th Ed.1989). It may be argued that § 707(b) is superfluous if the court already had inherent power to dismiss a Chapter 7 petition for lack of good faith

under § 105(a) or for abuse of process under § 707(a) of the Code. *In re Keniston,* 85 B.R. at 223.

However, the Sixth Circuit has, on September 21, 1989, approved the use of § 707(b) in a case dismissal. *In re Krohn,* 886 F.2d 123 (6th Cir.1989). *Krohn* involved a *sua sponte* hearing by the bankruptcy court, in which that court found that the debtor earned between $56,000.00 and $80,000.00 over the three years prior to and including the filing year. The debtor had $143,074.00 in unsecured debt and his budget included large amounts for "recreational," "charitable," "miscellaneous," "food," and "gift" expenses.

The *Krohn* court observed that § 707(b), along with other 1984 Amendments, "were passed in response to an increasing number of Chapter 7 bankruptcies filed each year by non-needy debtors." *Id.* at p. 126. Thus, "[s]ection 707(b) introduces an additional restraint upon a debtor's ability to attain Chapter 7 relief." *Id.* The *Krohn* court rejects the argument that § 707(b) is a "needless duplication" of existing "good faith" provisions. *Id.*

> In essence, § 707(b) allows a bankruptcy court to deal equitably with the unusual situation where an unscrupulous debtor seeks to enlist the court's assistance in a scheme to take unfair advantage of his creditors; it serves notice upon those tempted by unprincipled accumulation of consumer debt that they will be held to at least rudimentary standard of fair play and honorable dealing.

*Id.*

The Sixth Circuit does not mechanically adopt as a standard the debtor's ability to fund a Chapter 13 plan. To do so would create a difficult, if not constitutionally defective, standard. For example, many Chapter 7 consumer debtors, such as the *Krohn* debtor, would not be eligible for Chapter 13 relief because of an excess of the debt limits imposed by 11 U.S.C. § 109(e). *See, e.g., In re Keniston,* 85 B.R. at 222 (suggesting that if ability to fund a Chapter 13 plan were the sole test, Congress would have removed the § 109(e) monetary limits). Compare *In re Krohn,*

at p. 127 (use of ineligibility for Chapter 13 as an avoidance of dismissal under § 707(b), "could be said to encourage debtors to run up unsecured debts in excess of $100,000.00, thereby avoiding dedication of future earnings to debt retirement under Chapter 13"). *Id.*

Rather than a "bright-line test," The Sixth Circuit adopted a "totality of circumstances" test, under which the bankruptcy court must determine whether the debtor

is merely seeking an advantage over his creditors, or instead is "honest," in the sense that his relationship with his creditors has been marked by essentially honorable and undeceptive dealings, and whether he is "needy" in the sense that his financial predicament warrants the discharge of his debts in exchange for liquidation of his assets. *See,* 4 *Collier, supra,* ¶ 707.07, at 707–20. *Substantial abuse can be predicated upon either lack of honesty or want of need.*

*In re Krohn* at 126 (emphasis added).

As *Krohn* observes, a listing of "all factors that may be relevant to ascertaining a debtor's honesty" is not possible. *Id.* However, those factors would include: the debtor's "good faith and candor in filing schedules and other documents," whether there have been "eve of bankruptcy purchases," and whether the Chapter 7 filing was brought about "by unforeseen and catastrophic events." *Id.*

As to the factors to be weighed in determining the debtor's need for Chapter 7 relief, the *Krohn* Court includes "ability to repay debts out of future income," which *may* justify dismissal, if for example, the debtor's "disposable income permits liquidation of his consumer debts with *relative* ease." *Id.* (emphasis added). Other *need* factors may include:

whether the debtor enjoys a stable source of future income, whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the potential to ease his financial

predicament, the degree of relief obtainable through private negotiations, and whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities.

*Id.* at 126–27.

The *Krohn* Court again did not state that ability to fund a Chapter 13 plan was automatically grounds for § 707(b) dismissal. Neither is "inability to qualify" for Chapter 13 automatically dispositive of the § 707(b) issues, "since there are other factors to be considered in deciding if a debtor is needy." *Id.* at 127

Congress is free, said the *Krohn* Court, to modify the extent of bankruptcy discharge and "fresh start," and § 707(b) "is evidence that Congress believed there are some circumstances where it would not be equitable to grant a particular debtor a fresh start." *Id.* at p. 127.

In *Krohn,* the bankruptcy court had focused upon the debtor's honesty and good faith. Unlike *Krohn,* this Court finds no evidence of dishonesty, bad faith, callousness or efforts to seek advantage over creditors by Ms. Wilkes. Indeed, the U.S. Trustee did not proceed on such grounds.

 Rather, the U.S. Trustee approaches this § 707(b) motion, heard prior to the issuance of the *Krohn* opinion, on the basis that this debtor could pay a substantial part of her unsecured debt in a Chapter 13 plan. Under *Krohn,* the question is whether this debtor is in need of Chapter 7 relief, and the debtor enjoys a statutory presumption in favor of the requested Chapter 7 relief.[3] This Court does not read *Krohn* to require dismissal under § 707(b) merely because a particular debtor has disposable income with which to fund a Chapter 13 plan or to otherwise pay her creditors. That is certainly one, but only one, factor. Under a totality of circumstances, this Court is persuaded that it should consider the financial burden under which this debtor would be placed by re-

---

**3.** The Court notes that this debtor's counsel is experienced in representation of Chapter 13 debtors.

quiring her to file for Chapter 13 rather than Chapter 7 relief.[4] While this debtor may be able to fund a Chapter 13 plan, her disposable income is minimal and is subject to instant depletion if she or a child becomes ill or if household expenses increase even slightly. This debtor and her dependents live on a limited income, and there is no indication of excessive or unreasonable expenses in her budget. This Court believes it is appropriate in cases such as this to consider a debtor's total income and budget, as well as the necessity and reasonableness of specific expense items in assessing the debtor's need for Chapter 7 relief. This debtor cannot liquidate her unsecured consumer debts "with relative ease." *Krohn* at 126.

In summary, under § 707(b) when either the debtor's honesty, or good faith, or need are at issue, *Krohn* teaches that this Court must engage in a totality of circumstances examination. A mechanical economic test is no longer appropriate. After examining the totality of circumstances, this Court finds that the proof has not disturbed the statutory presumption favoring Jamesetta Herrington Wilkes. The motion for dismissal under § 707(b) is denied, and this debtor's case administration will proceed under Chapter 7.

---

4. This Court is also concerned that Chapter 13 should not by judicial act become a *de facto* involuntary relief. See 11 U.S.C. § 303(a) providing that involuntary relief may be sought only under Chapter 7 or 11.