**In re Kenneth Allen SCHEINBERG, Janine Sue Scheinberg, Debtors.**

**Bankruptcy No. 90–12963.**

United States Bankruptcy Court, D. Kansas.

June 10, 1991.

See also 134 B.R. 426.

William H. Zimmerman, Jr. of Wallace and Zimmerman, Wichita, Kan., for debtors.

Richard A. Wieland, Staff Atty., U.S. Trustee's Office, Wichita, Kan., for U.S. Trustee.

## MEMORANDUM OF DECISION ORDERING CONVERSION OR DISMISSAL

JOHN K. PEARSON, Bankruptcy Judge.

This Chapter 7 case is before the Court for a ruling on the United States Trustee's motion to dismiss the case under 11 U.S.C. § 707(b) on the ground that granting relief to the debtors would constitute an abuse of the bankruptcy process. The parties have briefed the issue and the relevant stipulated facts are set forth below.

### JURISDICTION

This is a core proceeding upon which the Court may enter a final order. 28 U.S.C. § 157(b)(2)(A) and (K).

### FACTS

The parties have stipulated to the following facts:

1. On October 2, 1990 the debtors commenced this case by filing a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.

2. The debtors' total indebtedness was listed as $489,457.11. This included se-

cured debt of $337,218.08 and unsecured consumer debt of at least $130,117.44.

3. The stipulated unsecured debt does not include the debtor Kenneth Scheinberg's individual liability on, as yet unliquidated, malpractice claims presently pending in the New York state courts. The stipulated totals also do not include $22,475.42 in unsecured priority tax liabilities to the State of New York and New York City.

4. Although it is unclear from the stipulation, a review of the schedules indicates that the unsecured debt total includes the debtors' liability to Kenneth Scheinberg's father on a non-interest bearing note in the amount of $60,000.00, secured by a second mortgage on their former residence in New Rochelle, New York. There is no equity in the former residence for the second mortgage.

5. The debtors have a monthly disposable income of approximately $1,933.92. This amount is calculated by deducting estimated expenses of $7,066.08 from projected take home pay of $9,000.00 per month.

6. While the parties have stipulated to the debtors' ownership and attempts to sell their former homestead in New Rochelle, New York, since there is no contention that debtors' debts are not primarily consumer debts, the stipulation is not relevant to the determination of the motion.

In addition to reviewing the stipulations of fact, the Court has reviewed the debtors' schedules, statement of affairs and the mandatory schedule of current income and expenditures. The schedules disclose that some $22,475.42 in priority tax claims are not included in the stipulated unsecured debt total. If included the debtor's scheduled unsecured debt totals $152,592.86.

■ Although the parties stipulated that "[t]he debtors do not qualify for Chapter 13 relief" the determination of eligibility is at least a mixed question of fact and law, if not a pure question of law. It is, therefore, not a proper subject of a stipulation of fact. The Court concludes, however, that on these facts, the debtors are not eligible for Chapter 13 relief. 11 U.S.C. § 109(e).

While gross monthly income is not disclosed, net monthly income is $9,000.00. The debtor's monthly expenses total $7,066.08. This includes $686.00 per month in "recreation, clubs and entertainment," $200.00 in miscellaneous expenses and $250.00 in "medical education travel expenses." The schedule lists an alimony expense of $600.00, but fails to disclose the name, age and relationship of the recipient. The statement of income does not show the receipt of any other income such as alimony, child support or bonuses from employment.

The schedules list $337,218.08 in secured debt, including $44,760.97 in debt secured by vehicles. The statement of expenditures indicates that the debtors are making payments of $780.00 per month on loans secured by automobiles.

## DISCUSSION

Section 707(b) resulted from demands by various creditor groups to stop the alleged abuses under the original Bankruptcy Code. Breitowitz, *New Developments in Consumer Bankruptcies: Chapter 7 Dismissal on the Basis of "Substantial Abuse,* 59 Amer.Bankr.L.J. 327 (Fall 1985) and 60 Amer.Bankr.L.J. 33 (Winter 1986) (hereafter "Breitowitz"). Although less solicitous of creditor interests than earlier versions, as adopted § 707 is a significant victory for the consumer credit industry. *Id.* at 329.

Although the legislative history of the rather vague language of § 707 has been extensively traced by the commentators and courts, the courts are not in agreement on the proof necessary to support a dismissal under § 707. *Id. See, e.g., In re Kelly,* 841 F.2d 908, 914 (9th Cir.1988). 11 U.S.C. § 707(b) provides:

After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any part in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the

provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

A court is granted broad discretion to dismiss a Chapter 7 case.

■ Generally, the courts break the question down into two parts: (1) Are the debtor's debts primarily consumer debts; and (2) Would the granting of a discharge constitute a substantial abuse of the bankruptcy process? Here, the debtors do not assert that their debts are not primarily consumer debts. Assuming that the debt for the home in New Rochelle, New York is a consumer debt, the debtors' debts are primarily consumer debts. *Cf. In re Kelly*, 841 F.2d at 913. ("It is difficult to conceive of any expenditure that serves a 'family ... or household purpose' more directly than does the purchase of a home and the making of improvements thereon.") Further, the stipulated facts do not include an estimate of the malpractice claims or whether any part of them is covered by insurance. Based upon the facts before it, the Court concludes that the debtors' debts are primarily consumer debts.

The focus then shifts to the second inquiry: Whether the granting of a discharge in this particular case would constitute a substantial abuse of the bankruptcy process? This issue has not been addressed by this Circuit and the courts that have considered the issue are divided on what constitutes "substantial abuse". Although there is a presumption in favor of granting Chapter 7 relief, the courts look to a number of factors to overcome the presumption.

The primary factor is the repayment ability of the debtor. In *In re Kelly*, the Ninth Circuit stated "[T]he unanimous conclusion of the bankruptcy courts has been that the principal factor to be considered in determining substantial abuse is the debtor's ability to repay the debts for which a discharge is sought. [Citations omitted.]" 841 F.2d at 914. Although other factors may be considered, the debtor's ability to pay his debts when due, *as determined by his ability to fund a Chapter 13 plan*, is the primary factor to be considered in de-

termining whether granting relief would be a substantial abuse. *Id.*

While the courts are not quite as united as the Ninth Circuit suggests, the majority of the courts interpret the "substantial abuse" language to encompass consideration of the debtor's ability to pay his debts out of future income. *In re Krohn*, 886 F.2d 123 (6th Cir.1989); *In re Walton*, 866 F.2d 981 (8th Cir.1989); *Matter of Dubberke*, 119 B.R. 677 (Bankr.S.D.Iowa 1990). A few courts, while placing emphasis on the debtor's income and ability to repay debts, also look to other factors. *In re Hammer*, 124 B.R. 287 (Bankr.C.D.Ill. 1991); *In re Harris*, 122 B.R. 744 (Bankr. S.D.1990).

■ The Court is persuaded that a showing of substantial repayment capacity alone justifies a conclusion that substantial abuse is involved. In reviewing the case law on this issue, it is striking that the amounts of disposable income deemed sufficient to justify dismissal under § 707(b) generally range *downward* from $500.00 per month! In many of the cases the Court reviewed potential dismissal is based on disposable income of under $200.00. *In re Wilkes*, 114 B.R. 551 (Bankr.W.D.Tenn.1989). Many of the courts do not seem to consider that there may be emergencies or other demands on the debtor's cash flow which would justify a small monthly reserve. *But cf. In re Wilkes, supra.*

■ Here, the debtors have stipulated to a disposable income of almost $2,000.00 per month in excess of expenditures. Included in the expenditures is a "miscellaneous" category of $200.00 and a recreation fund of nearly $700.00. The debtors clearly have substantial repayment capacity. There is no question that if the debtors were eligible for Chapter 13, the Court would order dismissal in this case. The question is then whether eligibility for relief under Chapter 13 is a prerequisite for dismissal under 11 U.S.C. § 707(b).

The cases which have previously considered the substantial abuse issue have generally involved debtors who were eligible for relief under Chapter 13. One of the

few exceptions, *In re Krohn,* 886 F.2d 123 (6th Cir.1989), involved an individual debtor whose wife did not file and whose total debts rendered him ineligible for relief under Chapter 13. He argued that § 707 did not apply to him since he was ineligible for Chapter 13. The Sixth Circuit disagreed stating:

> The anomalous result of saying those whose high unsecured indebtedness renders them ineligible for Chapter 13 treatment can always avoid § 707(b) dismissal, would be rewarding outrageous abusers of consumer credit, while denying to those with more moderate consumer debt the benefits of Chapter 7. Indeed, such a bright-line test could be said to encourage debtors to run up unsecured debts in excess of $100,000.00, thereby avoiding dedication of future earnings to debt retirement under Chapter 13.

886 F.2d at 127. The Court agrees and holds that the fact that the debtors are ineligible for relief under Chapter 13 does not bar dismissal of this Chapter 7 case.

The Court further holds that granting Chapter 7 relief to the debtors here would constitute a substantial abuse in view their substantial disposable income. Devoting the substantial disposable income (and possibly a portion of any bonuses, increases in income and the expenditures earmarked for "recreation") to a Chapter 11 plan to repay creditors would result in full payment of the nonfamily consumer claims within five years.

It is dangerous for a court to both propose and confirm a hypothetical Chapter 11 plan. *Ahlers v. Norwest Bank Worthington,* 794 F.2d 388 (8th Cir.1986) *rev'd, Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988). Chapter 11 plans, however, do permit some freedom in classifying creditors. Different classes might receive different payments while the $2,000.00 surplus is devoted to debt repayment. Moreover, a Chapter 11 plan might simply surrender the burdensome house in New Rochelle to the secured creditor in satisfaction of the debt. The legislative history and case law suggest that debtors with substantial repayment capacity should attempt to repay their debts before being granted a discharge in Chapter 7. If the creditors refuse to accept a Chapter 11 plan proposing to devote disposable income to repayment, then the debtors may seek relief in Chapter 7.

The debtors will be given thirty days from the entry of this order to convert this case to a Chapter 11. Failing conversion, the case is dismissed, as of that date, pursuant to 11 U.S.C. § 707(b).

The foregoing constitutes findings of fact and conclusions of law as required by Fed.R.Civ.P. 52(a) and Fed.R.Bankr.P. 7052. A separate judgment will be entered giving effect to the determinations reached herein.