In re Kenneth Allen **SCHEINBERG** and Janine Sue Scheinberg, Debtors.

Kenneth Allen **SCHEINBERG** and Janine Sue Scheinberg, Appellants,

v.

UNITED STATES TRUSTEE, Appellee.

Bankruptcy Nos. 90–12963, 91–1235–C.

United States District Court, D. Kansas.

Jan. 3, 1992.

William H. Zimmerman, Jr., Wallace & Zimmerman, Wichita, Kan., for appellant, debtor.

Richard A. Wieland, Wichita, Kan., for U.S. Trustee.

## MEMORANDUM AND ORDER

CROW, District Judge.

This is an appeal from the bankruptcy court's dismissal of the debtor's voluntary Chapter 7 bankruptcy case. *In re Scheinberg*, 132 B.R. 443 (Bankr.D.Kan.1991). The issue on appeal is whether the bankruptcy court erred in finding that to grant the debtors their requested relief would be a substantial abuse of the provisions of Chapter 7. The parties submitted the issue of dismissal, raised by the trustee's motion,

to the bankruptcy court on stipulated facts. On June 10, 1991, the bankruptcy court filed its memorandum of decision sustaining the trustee's motion.

The stipulated facts are as follows:

1. The debtors, Kenneth Allen Scheinberg and Janine Sue Scheinberg, filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on October 2, 1990.

2. The debtors' scheduled indebtedness totals $489,810.91. Included in this total are secured debts of $337,318.08 and unsecured debts of $130,117.44 [1]. Among the secured debts is the $292,457.11 real estate mortgage on debtors' former residence in New Rochelle, New York.

3. Debtors also scheduled six malpractice actions with a zero or unknown amount of potential indebtedness.

4. Debtors' monthly take home income is $9,000.00. Their estimated monthly expenses are $7,066.08. This leaves the debtors with a monthly disposable income of approximately $1,933.92.

5. Debtors do not qualify for relief under Chapter 13.[2]

6. Monthly mortgage payments on their former residence in New Rochelle are $3,316.07. This real property is also mortgaged to Kenneth Scheinberg's father to secure a $60,000, non-interest bearing note. Debtors have attempted to sell this property by listing it with various realtors since April 26, 1989, and by lowering the price by over $85,000. Debtors are obligated to pay a 6% commission to the realtor upon the sale of the property. As of March 15, 1991, debtors had received no offers on the New Rochelle property.

Section 707(b) is one of several consumer credit amendments to the Bankruptcy Code made by Congress in 1984 in response to pressure from the consumer credit indus-

---

**1.** The bankruptcy court recalculated this amount to be $152,592.86, as the parties had not included $22,475.42 in priority tax claims.

**2.** The bankruptcy court viewed the debtors' eligibility as a question of law and not a proper

subject for stipulation. The bankruptcy court, however, agreed that upon the facts disclosed in the stipulations the debtors were not eligible for Chapter 13 relief.

try. *In re Green*, 934 F.2d 568, 570 (4th Cir.1991). Section 707(b) provides:

> (b) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

This provision creates the means for preventing an unscrupulous debtor from abusing Chapter 7 and from unfairly taking advantage of consumer creditors.

The courts have broken down the applicability of § 707(b) into two separate inquiries. First, are the debtor's debts primarily consumer debts? Second, would the allowance of Chapter 7 relief to the debtor be a substantial abuse of this chapter? In this case, there is no dispute that the debtors have primarily consumer debts. What constitutes "substantial abuse" and what factors should be considered under this inquiry are specifically the questions raised on appeal.

## STANDARD OF REVIEW

The district court is to review the bankruptcy court's findings of fact under a clearly erroneous standard and its legal determinations under a *de novo* standard. *In re Branding Iron Motel, Inc.*, 798 F.2d 396, 399–400 (10th Cir.1986). What constitutes a substantial abuse for purposes of § 707(b) is a question of law for the district court to consider *de novo*. *In re Green*, 934 F.2d at 570. The factual findings un-

derlying a conclusion on substantial abuse are subject to a clearly erroneous standard of review. *Id.* A finding of fact is clearly erroneous if the reviewing court has the definite and firm conviction that a mistake has been made. *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). Even if the case is submitted to the lower court on stipulated facts, "'the ordinary standard of review still inheres.'" *Adair State Bank v. American Casualty Co.*, 949 F.2d 1067 (10th Cir.1991) (quoting *Sears v. Atchison, Topeka & Santa Fe Ry. Co.*, 645 F.2d 1365, 1370 (10th Cir.1981), *cert. denied*, 456 U.S. 964, 102 S.Ct. 2045, 72 L.Ed.2d 490 (1982)).

## SUBSTANTIAL ABUSE

Congress chose not to define this term in the text of § 707(b), and there is no significant legislative history behind it.[3] Consequently, courts have struggled with the concept and have adopted differing approaches.[4] As of the date of this opinion, the Tenth Circuit has not addressed the meaning of "substantial abuse" in the § 707(b) context or the factors to be weighed under it.

As adopted by the Ninth Circuit, one approach is "that a debtor's ability to pay his debts will, standing alone, justify a section 707(b) dismissal." *In re Kelly*, 841 F.2d 908, 914 (9th Cir.1988) (citations omitted); *see also In re Krohn*, 886 F.2d 123, 126 (6th Cir.1989) ("That factor [ability to repay] alone may be sufficient to warrant dismissal.") The Ninth Circuit reached this conclusion after reviewing numerous bankruptcy court decisions which had considered the principal factor for determining substantial abuse to be the debtor's capa-

---

**3.** Legislative history does reflect that § 707(b) was one of the amendments intended to stem the use of Chapter 7 by unneedy debtors. *In re Walton*, 866 F.2d 981, 983 (8th Cir.1989). Some courts have resorted to legislative history behind Senate Bill, S. 445, which was introduced in 1983 and contained many of the 1984 amendments. *See, e.g., In re Kelly*, 841 F.2d 908, 914 (9th Cir.1988). *But see, e.g., In re Green*, 934 F.2d at 571. The committee report on the final version of S. 445 states that "if a debtor can meet his debts without difficulty as they come

due, use of Chapter 7 would represent a substantial abuse." S.Rep. No. 98–65, 98th Cong., 1st Sess. 54 (1983).

**4.** The Fourth Circuit has hypothesized that the ambiguity of the term, "substantial abuse," and the lack of any statutory definition is explained by Congress' difficulty in balancing the competing policies of giving the debtor a fresh start and of limiting consumer credit abuse. *In re Green*, 934 F.2d at 571.

bility for repayment of the debts. 841 F.2d at 914.

In contrast, other courts have looked to the totality of the circumstances and given emphasis to the debtor's ability to pay the debts for which discharge is requested. *In re Green*, 934 F.2d at 571–73; *In re Walton*, 866 F.2d 981, 984–85 (8th Cir.1989); *Waites v. Braley*, 110 B.R. 211, 215 (E.D.Va.1990); *In re Vesnesky*, 115 B.R. 843, 847–48 (Bankr.W.D.Pa.1990). Other factors to be considered include:

(1) Whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment;

(2) Whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay;

(3) Whether the debtor's proposed family budget is excessive or unreasonable;

(4) Whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition; and

(5) Whether the petition was filed in good faith.

*In re Green*, 934 F.2d at 572 (quoting *In re Strong*, 84 B.R. 541, 545 (Bankr.N.D.Ind. 1988); *In re Grant*, 51 B.R. 385, 392 (Bankr.N.D.Ohio 1985)). Under this approach, the courts do not *per se* dismiss when the debtor has the ability to repay but balance this factor along with other mitigating circumstances. *See, e.g., In re Vesnesky*, 115 B.R. at 849; *In re Higginbotham*, 111 B.R. 955, 964–65 (Bankr.N.D.Okla.1990).

Regardless of the approach taken, it is clear that the primary factor involved in § 707(b) determinations is the debtor's capacity for repayment. The rationale behind the significance given to this factor is equally clear. A debtor would receive a "head start" rather than a "fresh start" if he could escape debts for which he has the means to repay. *Waites v. Braley*, 110 B.R. at 215. " 'It is morally and legally unconscionable that a person should be able to extinguish his obligations without first making a reasonable effort to fulfill them.' " *Waites v. Braley*, 110 B.R. at 215

(quoting *In re Hudson*, 56 B.R. 415, 419 (Bankr.N.D.Ohio 1985)).

In the present case, the bankruptcy court took the latter approach believing other factors could be relevant besides ability to repay. But it ultimately held that "a showing of substantial repayment capacity alone justifies a conclusion that substantial abuse is involved." 132 B.R. at 445. In finding that debtors had the capacity to repay, the bankruptcy court relied not only on the undisputed fact that debtors had a monthly disposable income in excess of $1900 but also considered that debtors had scheduled large monthly expenses for "recreation, clubs and entertainment" totalling $600, for "medical education travel expenses" totalling $250, and for "miscellaneous expenses" totalling $200. *Id.* The bankruptcy court concluded that using their disposable income and a portion of any bonuses, wage increases, or expenses earmarked for recreation, the debtors could make a full repayment of their nonfamily consumer debts within five years under a Chapter 11 plan. *Id.* at 446.

The debtors principally argue that the bankruptcy court erred in not finding that their ability to repay their debts was offset by other factors. Besides their consumer credit debts, the defendants face at least six malpractice actions and a substantial deficiency judgment with respect to their former residence in New Rochelle, New York. The debtors make no effort to reveal the true financial risk involved with the pending malpractice actions. There is no disclosure of the amount of the claims or whether insurance will cover some or all of any award against the debtors. Debtors also make no attempt to substantiate what will be, in their opinion, a "substantial deficiency judgment." Their last asking price on the property was only $13,000 less than their total mortgage obligations. Speculation on the existence and amount of expenses is not a persuasive reason for reversing the bankruptcy court.

In determining a debtor's ability to pay, courts have looked to whether the debtor has the means to fund and is eligible for a Chapter 13 plan. *In re Walton*, 866 F.2d

at 984; *In re Kelly*, 841 F.2d at 914. The parties have stipulated, and the bankruptcy court has found, that the Scheinbergs are not eligible for Chapter 13 relief as their unsecured debts exceed the $100,000 limit. After indicating that a Chapter 11 plan could be a viable alternative for the Scheinbergs, the bankruptcy court ordered that the debtors would have thirty days to convert their case to Chapter 11, and absent that conversion, their case would be dismissed.

The debtors argue that the bankruptcy court erroneously imposed Chapter 11 as a condition precedent to relief under the Chapter 7.[5] While the bankruptcy court's order could be read to impose a condition precedent, this court believes the bankruptcy court was simply emphasizing that the Scheinbergs' ability to repay their consumer debt could be protected and even furthered through other relief available under the Code. The Scheinbergs asked the bankruptcy court to consider their ineligibility for Chapter 13 relief in deciding the trustee's motion to dismiss. They, however, do not explain why they believe it is appropriate for courts to consider the availability and use of Chapter 13 but inappropriate for the courts to consider the same under Chapter 11. Since the Supreme Court has recently settled the issue of Chapter 11's availability to individual, non-business, debtors, *Toibb v. Radloff,* ——— U.S. ———, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991), the debtors are without a reason for their conflicting positions. The bankruptcy court did not error in considering whether the Scheinbergs could timely repay their nonfamily consumer debts through a feasible Chapter 11 plan.

The debtors' next argument is an attempt to recast the standards for measuring substantial abuse. In response to debtors' contention that Chapter 7 relief is proper because of their ineligibility for Chapter 13 relief, the bankruptcy court held:

> The cases which have previously considered the substantial abuse issue have generally involved debtors who were eligible for relief under Chapter 13. One of the few exceptions, *In re Krohn*, 886 F.2d 123 (6th Cir.1989), involved an individual debtor whose wife did not file and whose total debts rendered him ineligible for relief under Chapter 13. He argued that § 707 did not apply to him since he was ineligible for Chapter 13. The Sixth Circuit disagreed stating:
>
>> The anomalous result of saying those whose high unsecured indebtedness renders ineligible for Chapter 13 treatment can always avoid § 707(b) dismissal, would be rewarding outrageous abusers of consumer credit, while denying to those with more moderate consumer debt the benefits of Chapter 7. Indeed, such a bright-line test could be said to encourage debtors to run up unsecured debts in excess of $100,000.00, thereby avoiding dedication of future earnings to debt retirement under Chapter 13.
>
> 886 F.2d at 127. The Court agrees and holds that the fact that the debtors are ineligible for relief under Chapter 13 does not bar dismissal of the Chapter 7 case.

132 B.R. at 445–46. From this, the debtors extract a new standard. If the debtors are ineligible for Chapter 13 relief, then they are entitled to Chapter 7 relief unless it is

---

**5.** The debtors take issue with the following statement by the bankruptcy court:

> It is dangerous for a court to both propose and confirm a hypothetical Chapter 11 plan. *Ahlers v. Norwest Bank Worthington*, 794 F.2d 388 (8th Cir.1986) *rev'd, Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988). Chapter 11 plans, however, do permit some freedom in classifying creditors. Different classes might receive different payments while the $2,000 surplus is devoted to debt repayment. Moreover, a

Chapter 11 plan might simply surrender the burdensome house in New Rochelle to the secured creditor in satisfaction of the debt. The legislative history and case law suggest that debtors with substantial repayment capacity should attempt to repay their debts before being granted a discharge in Chapter 7. If the creditors refuse to accept a Chapter 11 plan proposing to devote disposable income to repayment, then the debtors may seek relief in Chapter 7.

found that they are outrageous abusers of credit or acted in bad faith.

The court does not read the *Krohn* opinion as creating an additional test or subjective standard whenever a debtor who has the means for repayment is ineligible for Chapter 13 relief. The Sixth Circuit was simply showing the policy problem with using Chapter 13 eligibility as a bright-line test for § 707(b) dismissal. 886 F.2d at 127. Stating the policy reason another way, if § 707(b) was intended to stem consumer credit abuse then it should not be construed in a way that it would encourage, rather than discourage, credit abuse. Furthermore, the courts have recognized that bad faith may be one factor to weigh under § 707(b), but they have rejected it as a prerequisite to a finding of substantial abuse. *In re Walton*, 866 F.2d at 983; *In re Harris*, 125 B.R. 254, 257–58 (D.S.D.1991); *Waites v. Braley*, 110 B.R. at 217.

Finally, the debtors attack the bankruptcy court's order as inconsistent with the statutory presumption favoring discharge, as arbitrary, and as unsupported by articulated, reasonable grounds. The presumption that a debtor is entitled to Chapter 7 discharge is rebuttable, not conclusive. *Matter of Dubberke*, 119 B.R. 677, 679 (Bankr.S.D.Iowa 1990). The bankruptcy court's finding of substantial abuse is supported by the evidence. The debtors' disposable income, by itself, if properly applied, would pay off the Scheinbergs' consumer debt within a reasonable period of time. With some "good, old-fashioned belt tightening," *In re Krohn*, 886 F.2d at 128, the Scheinbergs could have at their disposal additional income for use in paying their consumer debts. The debtors' financial problems were not caused by any sudden calamity, unemployment or illness. A significant portion of their debts comes from substantial balances on several credit cards. The bankruptcy court did not err in finding that the debtors in the long run can afford to pay their consumer debts and that to allow them discharge under the totality of the circumstances would be a substantial abuse of the provisions of Chapter 7.

IT IS THEREFORE ORDERED that the bankruptcy court's memorandum of decision and judgment on decision, both filed on June 10, 1991, are affirmed.