In re Jay D. DAWSON and Susan D. Dawson d/b/a Copies Plus, Debtors.

Bankruptcy No. 89–20799–7.

United States Bankruptcy Court, D. Kansas.

Nov. 24, 1993.

■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■

Michelle M. Suter of McDowell, Rice & Smith, Overland Park, KS, for Mapleton Properties Partnership.

Eric C. Rajala, Chapter 7 Trustee.

## MEMORANDUM OPINION

JOHN T. FLANNAGAN, Bankruptcy Judge.

Mapleton Properties Partnership appears by its attorney, Michelle M. Suter of McDowell, Rice & Smith, Overland Park, Kansas. Eric C. Rajala, the Chapter 7 trustee, also appears.

Mapleton Properties Partnership ("Mapleton" or "landlord") filed Proof of Claim No. 10 (labeled as an administrative claim). The Chapter 7 trustee objected. The Court considers the Proof of Claim as an application for administrative expenses.

The Honorable Benjamin E. Franklin held non-evidentiary hearings on the objection on April 22, 1992, and May 20, 1992. Because of Judge Franklin's death in April 1993, the parties have agreed to allow the undersigned to rule on the issue based on the briefs and stipulation of facts submitted.

Mapleton wants its rent payments due from debtors under a non-residential real property lease allowed as an administrative expense in the amount of $4,934.63. The trustee did not pay the lease rent after the filing of the bankruptcy petition even though the debtors remained in possession of the premises.

The statutes entitle Mapleton to the lessee's performance of the lease obligations after commencement of the case. Prior to 1984, the Bankruptcy Code did not expressly deal with the performance obligations of the trustee or debtor-in-possession after the filing. However, the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333 (1984), amended § 365 to require the trustee to comply with the debtor's obligations while he decides whether to assume or reject the lease. Section 365(d)(3) of Title 11, United States Code, now reads in pertinent part:

> The trustee shall timely perform all the obligations of the debtor ... arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title. . . .

Under § 365(d)(4), the trustee is allowed a period of 60 days in which to decide whether to assume or reject an unexpired lease of non-residential real property:

> [I]n a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, ... then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.

The facts of this case are agreed in the following stipulation filed on May 15, 1992:

## STIPULATION OF FACTS

COME NOW Mapleton Properties Partnership, a creditor herein, by and through its attorney, Michelle M. Suter, of the firm McDowell, Rice & Smith, a Professional Corporation, and Eric C. Rajala, Chapter 7 Trustee, and submit the following Stipulation of Facts for use by the Court in determining whether and to what extent the Administrative Claim filed by Mapleton Properties Partnership shall be allowed and paid from assets collected in this bankruptcy case.

1. On March 15, 1989, Mapleton Properties Partnership as Lessor and Jay D. Dawson and Susan D. Dawson, husband and wife, d/b/a Copies Plus as Lessee, entered into a certain Commercial and Industrial Lease Agreement whereby Debtors agreed to make payment to this Creditor as and for lease of certain properties described as:

> 3,500 square feet with a common address of 15145 South Keeler, Suite A and Suite B, Olathe, Kansas.

2. A true and correct copy of said Commercial and Industrial Lease Agreement is attached hereto marked as "Exhibit A" and is incorporated herein by this reference.[1]

3. On September 13, 1989, a Journal Entry of Default Judgment was filed in Johnson County District Court, Case No. 89 C 9077, in which this Creditor was granted judgment against Defendants Jay D. Dawson and Susan D. Dawson for possession of the premises located in Olathe, Johnson County, Kansas and described as:

3,500 square feet with a common address of 15145 South Keeler, Suite A and Suite B.

4. A true and correct copy of said Journal Entry of Default Judgment is attached hereto marked as "Exhibit B" and is incorporated herein by this reference. [*See* Footnote n. 1, *supra.*]

5. On May 22, 1989 Debtors filed their voluntary Petition for Relief under Chapter 7 of Title 11, U.S. Code, which was assigned Case No. 89–20799.

6. On September 26, 1989, this Creditor filed its Proof of Claim in the amount of $4,934.63 as an Administrative Claim of this bankruptcy case.

7. On September 21, 1989, Debtors received their discharge under 11 U.S.C. 523.[2]

8. Debtors remained in the leased premises until September 17, 1989 and during such time continued to operate a business known as Copies Plus.

9. At no time did the Trustee operate such business with or on behalf of Debtors at the leased premises.

10. At no time referenced herein was the Trustee in possession of the leased premises.

11. Accrued rent, late charges, common area maintenance charges, a lawn service fee and an insufficient funds check fee due to Mapleton Properties Partnership pursuant to the lease totalled $4,956.23.

12. Debtors did not make any payment either in money or by a transfer of other property to the Trustee from the post-Petition operations out of the leased premises.

13. Attached hereto marked as "Exhibit C" is a true and correct copy of a statement issued by Mapleton Properties Partnership to Copies Plus dated October 18, 1989. [*See* Footnote n. 1, *supra.*]

14. Prior to September 17, 1989, neither the Debtors nor the Trustee abandoned the leased property.

15. The Trustee did not assume or formally reject the Commercial and Industrial Lease Agreement attached hereto as Exhibit A, but said Lease expired by operation of law pursuant to 11 U.S.C. § 365(d)(1).[3] [Footnotes added.]

Stipulation of Facts filed May 15, 1992, at 1–3.

While the Code grants Mapleton a right to post-petition performance of the debtors' payment obligation under the lease, the exact nature of the right is unsettled. Section 365(d)(3) requires the trustee to timely perform the debtors' obligations, but it does not set out all of the consequences of non-compliance with that duty. Various interpretations of § 365(d)(3) have emerged where the lessor's obligation to perform during the 60–day period remains unfulfilled. Courts and commentators have read the section to mean that the landlord's performance rights are (1) a superpriority right above administrative expenses entitled to immediate payment; or (2) a priority right equal to that of other administrative expenses entitled to immediate payment only where there is a reasonable likelihood that all administrative expenses will be

---

1. The Commercial and Industrial Lease Agreement, the Journal Entry of Default Judgment, and the October 18, 1989, statement, which are referred to as Exhibits A, B and C in the Stipulation of Facts are not attached to this Memorandum Opinion.

2. This reference to § 523 is incorrect. The reference should probably be to § 727 and § 524.

3. Although the parties cite § 365(d)(1) in their stipulation, that section deals with "residential" real property. The proper reference should be to § 365(d)(4), which deals with "nonresidential" real property.

paid in full; or (3) a no priority right by reason of § 365(d)(3) unless administrative expense priority is gained through a showing that satisfies § 503(b)(1). *See* 1 David G. Epstein, *et al., Bankruptcy, Practitioner Treatise Series,* § 5–23 (1992), and cases cited therein.

The trustee argues for the latter interpretation, i.e., that the landlord must prove that its performance rights are actual, necessary costs and expenses of preserving the estate under § 503(b)(1)(A). Thus, unless Mapleton shows that the estate has benefited, the Court should deny administrative expense treatment of the application. Apparently, the trustee relies on the Stipulation to show that the estate has not benefited. The Stipulation states:

9. At no time did the Trustee operate such business with or on behalf of Debtors at the leased premises.

10. At no time referenced herein was the Trustee in possession of the leased premises.

Stipulation of Facts filed May 15, 1992, at 2–3.

The trustee cites *In re Bilyk,* 101 B.R. 586 (Bankr.E.D.Mo.1989), as holding that where an unexpired lease is deemed to have been rejected before the lessor requests payment of rent, the lessor must establish his administrative expense status under § 503(b)(1)(A) in order to have his claim allowed as an administrative expense. The Court finds the trustee's argument without merit. In referring to the court's decision in *Bilyk,* the court in *In re Worths Stores Corp.,* 135 B.R. 112, 116 (Bankr.E.D.Mo.1991), stated:

The Court in *Bilyk* had before it a request for post-petition expenses. This Court is faced with a request for post-petition/*pre-rejection* expenses pursuant to a trustee's obligation to timely perform the obligations of the debtor under § 365(d)(3). Judge Barta specifically stated in *Bilyk* that the question presented to him was not based upon a request to timely perform the debtor's obligations under § 365(d)(3) but was instead a request to determine the amount of a lessor's administrative expense claim for post-rejection rents.... [T]o the extent that *Orvco,* and as sup-

ported in this district by *Bilyk,* hold that a lessor under an unexpired lease of nonresidential real property must make a request for payment of an administrative rent expense prior to the date of rejection and must meet the requirements of § 503(b)(1)(A) in order to establish his administrative expense status, this Court respectfully disagrees.

■ Section 365(d)(3) commands that the trustee shall timely perform all the obligations of the debtor, "notwithstanding section 503(b)(1) of this title." This Court agrees with those courts interpreting this language to require timely payment of rent due under the lease without regard to the "actual, necessary costs" requirement under § 503(b)(1)(A). *See In re Virginia Packaging Supply Co., Inc.,* 122 B.R. 491, 494 (Bankr.E.D.Va.1990). Furthermore, the statute says nothing to indicate that the landlord must make a request for payment before deemed rejection occurs in order to be entitled to payment of the rents. Accordingly, this Court holds that such a request is not required.

■ This leaves open the question whether, in the context of this Chapter 7 case, the landlord's application is entitled to the same priority as other administrative expenses or to some higher priority. The following courts hold that the priority is on the same level as other administrative expenses, refusing to give superpriority status to the landlord's application where it is unclear that Congress intended such a result. *See, e.g., In re Buyer's Club Markets, Inc.,* 115 B.R. 700, 702 (Bankr.D.Colo.1990) (stating lessor's claim for rent accruing following conversion of debtor's case to Chapter 7 allowed as administrative expense); *In re Cardinal Industries, Inc.,* 109 B.R. 738, 742 (Bankr. S.D.Ohio 1989) (adopting the rationale that "had Congress intended to create a superpriority for sub-section 365(d)(3), it would have done so by express statutory language," quoting *In re Tandem Group,* 61 B.R. 738, 742 (Bankr.C.D.Cal.1986)); *In re Dieckhaus Stationers of King of Prussia, Inc.,* 73 B.R. 969, 973 n. 2 (Bankr.E.D.Pa.1987) (stating that the court was not convinced that Con-

gress intended that every non-residential lessor be a superpriority creditor). This Court agrees that the allowance under § 365(d)(3) should not be accorded a superpriority in this Chapter 7 case.[4]

Having concluded that § 365(d)(3) entitles Mapleton to an ordinary administrative expense claim in this Chapter 7 case without the burden of showing benefit to the estate, the Court must decide the amount of the administrative expense, which depends on the scope of Mapleton's right under § 365(d)(3). Does the landlord's right cover the rent due during the whole period since filing or only that amount due during the first 60 days?

In the Creditor's Memorandum In Support Of Approval of Administrative Claim, Mapleton argues that it filed an application "for post-petition rent which accrued, but went unpaid by the Debtors from the time the Petition herein was filed and for sixty days thereafter." (Creditor's Memorandum In Support Of Approval Of Administrative Claim filed June 1, 1992, at 1.) Nevertheless, the statement which is attached to Mapleton's Proof of Claim No. 10 includes amounts due during and after the 60–day period following the filing of the petition on May 22, 1989. The statement itemizes a rent charge of $1,750.00 for August 1989; a late charge of $100.00 for August 1989; a charge of $991.61 for rent from September 1, 1989, to September 17, 1989; and a common area maintenance charge of $38.25 from August 18, 1989. Subtracting the post–60 day amounts from the total Mapleton expense of $4,934.63 leaves $2,054.77 which was incurred during the first 60 days of the case, i.e., from the filing on May 22, 1989, until July 21, 1989.[5] The balance of $2,879.86 was incurred after the 60–day period expired.

■ The Court finds that Mapleton is entitled to the rental amount which is provided for in the lease during the period from the order for relief until rejection of the lease.

See *In re National Oil Co.*, 80 B.R. 525, 527 (Bankr.D.Colo.1987); *In re Virginia Packaging Supply Co., Inc.*, 122 B.R. 491, 494 (Bankr.E.D.Va.1990). Section 365(d)(3) provides that the trustee must timely perform all the obligations of the debtor "arising from and after the order for relief ... until such lease is assumed or rejected...." The trustee did not assume or reject the lease in this case; therefore, the lease was deemed rejected upon the expiration of 60 days from the order of relief. 11 U.S.C. § 365(d)(4). The debtors filed bankruptcy on May 22, 1989, and the 60–day period expired on July 21, 1989. Therefore, § 365(d)(3) entitles Mapleton to administrative expense priority for the portion of its application representing lease obligations arising from May 22, 1989, through July 21, 1989.

The portion of the expense representing lease obligations arising after the lease was deemed rejected are governed by § 503(b). *In re Virginia Packaging Supply Co., Inc.*, 122 B.R. at 494. Mapleton has not alleged or shown that these amounts are entitled to administrative priority by reason of § 503(b). Therefore, this Court will allow movant administrative expenses in the amount of $2,054.77 only. The trustee is directed to pay Mapleton its administrative expense in this amount forthwith, subject to the estate's right to withhold or recover any part of the payment exceeding Mapleton's prorata share if the debtors' assets are insufficient to pay all other administrative expenses in full.

■ Finally, the Court must question the trustee's use of parts of the stipulation in this case.[6] Certainly, stipulations are favored by the courts. They save the delay and expense of trials to establish factual issues. Courts should give effect to a stipulation whenever possible. However, there are limits to what a stipulation can accomplish. Stipulations as to questions of law are not binding on the court or the parties. *In re Scheinberg*, 132 B.R. 443, 444 (Bankr.D.Kan.1991), *aff'd* 134 B.R. 426 (D.Kan.1992) (stating that the de-

---

4. However, the same rule would not necessarily apply in a reorganization case in light of the control exercised by a debtor-in-possession.

5. This is the period under § 365(d)(3) before deemed rejection.

6. This refers to stipulation paragraph numbers 9 and 10.

termination of eligibility for Chapter 13 relief is at least a mixed question of fact and law, if not a pure question of law, and therefore not a proper subject of a stipulation of fact); *City of Lenexa v. Board of County Commissioners,* 237 Kan. 782, 784, 703 P.2d 800, 803 (1985) (stating that neither the court nor the parties are bound by stipulations as to questions of law). The Tenth Circuit has also noted that:

> Parties may not stipulate the findings of fact upon which conclusions of law and the judgment of the court are to be based. Parties may by stipulation establish evidentiary facts to obviate the necessity of offering proof, but based thereon the court must itself find the ultimate facts upon which the conclusions of law and the judgment are based.

*O'Connor v. City and County of Denver,* 894 F.2d 1210, 1225–26 (10th Cir.1990) (citing *Platt v. United States,* 163 F.2d 165, 168 (10th Cir.1947)).

If the Court were to accept certain parts of the stipulation tendered here, however, it would acknowledge that the trustee never possessed the leased property. If the trustee never possessed the leased property, as he argues, the estate could not have benefited and the landlord could not make a showing to satisfy § 503(b)(1)(A).[7] But, the trustee cannot use a stipulation to avoid his duty to the estate to reject the lease. When a Chapter 7 case is filed, the Code creates an estate comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case...." 11 U.S.C. § 541(a)(1). The United States Trustee appoints an interim trustee. 11 U.S.C. § 701. The interim trustee is charged with the duty to "collect and reduce to money the property of the estate...." 11 U.S.C. § 704. Can the interim trustee then be heard to say that he does not "possess" property under a lease to which debtor is a party because the debtor continues to operate a business on the leasehold premises without explicit permission of the trustee? In this Court's view, the meaning of "possession" in this context is broad enough to support the idea that leasehold property is in the possession of the estate and the trustee, even though the trustee has not taken it under his actual physical control. In Chapter 7, the trustee is the primary party responsible for the property of the estate. He can require the debtor's cooperation regarding that property. There is little the trustee cannot do, with the aid of the Court, to insure that the debtor complies with his directives regarding property of the estate.

In the usual Chapter 7 case, unless the trustee intends to continue operating the business, once he learns that there is an unexpired lease, he rejects the lease and abandons the leasehold property to the landlord to avoid the estate incurring liability for post-petition rent under § 365(d)(3). Here, as in the usual case, the trustee did not operate the business, but he did not reject the lease. Instead, he allowed the debtors to operate the business using the leasehold, thereby obligating the estate for administrative expenses equal to the rent. By failing to reject the lease, the trustee has permitted the landlord's rent claim to mature to the detriment of the unsecured creditors of the estate.

The Court does not suggest that fault lies entirely with the trustee. Yet, he did have ample opportunity to discover the problem. According to the court file, the United States Trustee appointed him interim trustee on June 2, 1989. He confirmed the appointment with his signature on June 6, 1989. This was 15 days after the case was filed and the order of relief was entered on May 22, 1989.

Debtors' Statement of Affairs lists the business lease. The trustee therefore knew or should have known about the lease from the time he confirmed his appointment. He could have inquired about it at the first meeting of creditors which was scheduled for June 30, 1989. For all the Court knows, he did so inquire. Yet, according to the stipulation, the trustee did not operate the business and had no "possession" of the leased premises.

---

**7.** The Court has held that § 503(b)(1)(A) does not apply to the rents accruing within 60 days of the order for relief. The creditor would have to satisfy this statute to gain priority status for post–60 day rents.

The landlord's inaction, and perhaps subterfuge, also may have contributed to the trustee's failure to reject the lease. Nothing in the file indicates that the landlord asked the trustee to turn over possession of the leased property immediately upon the filing of the case. So far as the court file shows, the landlord did nothing in the case until it filed its administrative expense application on September 26, 1989. Attached to the application was a judgment for possession granted by the District Court of Johnson County, Kansas, file marked September 13, 1989. Yet, the court file shows nothing to indicate that the landlord obtained relief from the automatic stay before getting the state court judgment. Although it took no action to regain its property after the filing of the bankruptcy on May 22, 1989, the landlord is now entitled to be paid the rent that accrued before the automatic rejection of the lease under § 365(d)(4). This result, while legal, is inequitable from the viewpoint of unsecured creditors.

Perhaps the United States Trustee should examine whether a procedure can be initiated to insure that this situation does not reoccur in other Chapter 7 cases. Absent other considerations, in a liquidation case this Court will certainly not hesitate to order immediate return of leased non-residential real property to the landlord if promptly asked to do so, thereby preserving the estate for other unsecured creditors.

This Memorandum Opinion shall constitute findings of fact and conclusions of law under Fed.R.Bankr.P. 7052 and Fed.R.Civ.P. 52(a). This proceeding is core under 28 U.S.C. § 157. The Court has jurisdiction under 28 U.S.C. 1334 and the general reference order of the District Court effective July 10, 1984.

IT IS SO ORDERED.